Maurice Wahl, J.
This is an action under the State Residential Rent Law (L. 1946, ch. 274, as amd.) by former residential tenants of an apartment to recover from their landlord treble damages for overcharge of rent under a lease between the parties, for damages from landlord’s failure to provide essential services and equipment included in the maximum legal rent, together with reasonable counsel fees and costs. Defendant interposed a general denial but admitted leasing to the plaintiffs and receiving the rent of $130 per mouth as alleged. At the trial defendant’s counterclaim was dismissed upon consent. Findings of fact and conclusions of law were waived.
Defendant rented apartment 50 in building No. 9 East 97th Street, New York City, to plaintiffs by written lease, dated March 9, 1954, for a term of two years commencing April 1, 1954 at a rental of $130 a month. The lease said the apartment “ shall be used by the tenants for their professional purposes, namely: medical offices and consultation rooms and medical practice; offices for cutting and editing films and for living.” In fact, the plaintiffs used the apartment for residential purposes only, as they intended, and never used it for any professional purposes nor did they receive any professional income therefrom.
The building contains 24 residential apartments, and is near Mount Sinai Hospital. The apartment is in the rear of the fifth floor, and has five rooms: a living room, three bedrooms, bath and kitchen, with the customary improvements.
*917 At the time of leasing, the maximum legal rent was $95 a month, which included the usual essential equipment and services such as painting and decorating and a stove.
About March 1, 1954 plaintiffs were living near Fort Dix, New Jersey, where plaintiff, Dr. Robert Jaffe, was about to be discharged from military service. He had been a research associate at Mount Sinai Hospital and was on leave of absence while in the service. Plaintiffs badly needed an apartment near the hospital for themselves and their child. "When they heard about the apartment they called the landlord and spoke to the president, a Mr. Glassheim, at his office at Long Beach, Long Island. Mrs. Jaffe told Mr. Glassheim that her husband was getting out o'f the army shortly, that they were coming back to New York to live and needed an apartment and wanted to see the apartment in question. Mr. Glassheim referred her to his renting agent in Manhattan, a Miss Jo Besse Waldeck, and told her to get in touch with her and make arrangements. Miss Waldeck showed the apartment to the plaintiffs twice. In substance, she told the plaintiffs on those occasions that she was the agent for the building, that the rent was $130 a month with a month’s security and a month’s rent in advance, that they would have to make a professional lease and that the landlord would not paint, decorate or repair. She told them that in order to get the apartment they would have to write a letter stating their professions and that they intended to use the apartment for professional purposes. Unless they wrote this letter, Miss Waldeck told plaintiffs, they would not get the apartment. She told them that the landlord was trying to convert the building to a professional basis and that many people had been to see the apartment and plaintiffs would have to decide in a hurry. Plaintiffs, in substance, told Miss Waldeck that Dr. Jaffe had a position at Mount Sinai Hospital, that they had a baby and needed the apartment to live in. Mrs. Jaffe told Miss Waldeck that she was a film editor and asked if that would help. Miss Waldeck said that it would.
Plaintiffs decided immediately to take the apartment. They gave Miss Waldeck her fee and she told plaintiffs the apartment was theirs and that she would prepare the lease in a few days. That night Dr. Jaffe wrote and mailed to the landlord the letter which Miss Waldeck told them they had to write. Defendant admits that this letter was the sole basis for making the lease a professional one. Defendant never made any inquiry about plaintiffs’ professional qualifications and has no knowledge of the actual use plaintiffs made of the apartment. He never met Mrs. Jaffe and says he met Dr. Jaffe once after tenants were in possession. Dr. Jaffe denied this.
*918 On March 9, 1954 at Miss Waldeck’s office, plaintiffs signed the lease which was prepared by Miss Waldeck and paid her the security and April rent in advance. Everything done in connection with the making of this lease was done by Miss Waldeck with the authority of Mr. Glassheim. Mr. Glassheim received the lease by mail from Miss Waldeck, executed it immediately and returned it.
Defendant admitted that all but its most recent leases were “ professional ” and admitted that 10 out of the last 13 or 14 vacant apartments had been rented by Miss Waldeck on “ professional ” leases. The others, Mr. Glassheim rented himself. Mr. Glassheim admitted that he instructed Miss Waldeck that the leases should be professional and indicated the amount of rent he wanted. Doctors associated with Mount Sinai Hospital were considered by the defendant to be desirable tenants.
Defendant did not produce any evidence of any professional use of the apartment on the part of the plaintiffs. Plaintiffs occupied and used the apartment solely for residential purposes. Neither plaintiff did any professional work nor received any fees for such work done at the apartment. In fact, plaintiff, Dr. Jaffe, had a laboratory and office at Mount Sinai Hospital and in June, 1954 rented an office for private practice at No. 16 East Eighty-third Street, New York, N. Y. He saw his patients only at that office or at Mount Sinai Hospital. Mrs. Jaffe, as a free lance assistant film editor and cutter, worked at studios in the city where large and expensive equipment is used in the editing and cutting stages of film production. The apartment was wholly unsuited for the actual practice by either of the plaintiffs of their professions. Furthermore, there were no signs or indications on the outside of the building, on the bells or letter boxes in the lobby or hallway, nor on the door of the apartment, that plaintiffs were professional people. The purported professional character of this lease is based exclusively on a letter written by plaintiffs at the instigation of the defendant’s renting agent.
Plaintiffs took possession of the apartment about April 1, 1954 and painted, repaired, plastered and decorated the apartment at their own expense alleged in the amount of $450. The painting and decorating was done substantially by the independent contractor hired by plaintiffs. In addition; plaintiffs gave landlord $40 representing half the cost of a new stove which defendant caused to be installed in the apartment.
The facts establish a scheme by the defendant landlord to evade the State Residential Rent Law by the subterfuge of a “ professional ” lease. The defendant’s renting agent induced *919 the plaintiffs to state that they desired to rent the apartment for professional purposes. The urgent pressure for these accommodations was on the plaintiffs. This the defendant and its renting agent knew and exerted their own pressure to label the apartment as “professional” rather than residential. Defendant knew full well that the apartment would be occupied and be used for residential purposes. The “ professional ” lease was a device to circumvent and evade the beneficial provisions and objectives of the State Residential Rent Law and is a willful and flagrant violation on the defendant’s part.
The courts and the State Rent Administrator have consistently held that where a tenant actually uses his apartment as a residence and in fact neither derives any income from nor uses it for the practice of his profession, the apartment is subject to the State Residential Rent Law and the State Rent and Eviction Regulations (Administrator’s Opinion, No. 99; Hutchison v. Green, 138 N. Y. S. 2d 468, mod. 142 N. Y. S. 2d 230; Ansbro v. 180 Riverside Corp., N. Y. L. J., March 3, 1953, p. 697, col. 1; Shaw v. Reberta Properties, N. Y. L. J., May 19, 1950, p. 1791, col. 3).
As a matter of public policy, the device of using a commercial lease to secure more than a maximum legal rent is a violation of the statute and does not deprive tenant of his statutory remedies, which tenant cannot waive by participation in the leasing scheme (State Rent and Eviction Regulations, § 16; Estro Chem. Co. v. Falk, 303 N. Y. 83; 97 Fifth Ave. Corp. v. Schatzberg, 283 App. Div. 407).
The rent control law is designed to prevent fraud or subterfuge indulged in by parties to so-called professional leases, although actually the premises are not at all thereafter used for professional purposes (Matter of Marvin Court v. McGoldrick, 150 N. Y. S. 2d 292, affd. without opinion, 283 App. Div. 1111 ; Bohn v. 434 East 59th St., 282 App. Div. 573).
The State Rent Administrator has adopted a new measure, effective May 1, 1955, in an effort to nip in the bud the vice of using professional leases for housing accommodations to avoid the rent ceilings. Section 13 of the State Rent and Eviction Regulations now provides that: “ Any housing accommodation subject to these Regulations which may be rented on or after May 1, 1955, for commercial or professional use shall continue to be subject to control and the landlord may not collect more them the maximum rent until an order is issued by the Administrator exempting the housing accommodation from these Regulations during the period of occupancy by the tenant. Such order *920 shall be issued by the Administrator where he finds that the renting complies with the requirements of state and local authorities and was made in good faith without any intent to evade the Act or these Regulations and shall be effective as of the date of the commercial or professional renting. ’’ (Emphasis supplied.)
The courts have consistently held that the false representations of the tenant as to his intentions, even made for the purpose of inducing the making of the lease, will not bar his recovery of statutory damages, if the landlord has the means of knowing the facts of the actual use of the apartment (Sylvester v. Bernstein, 283 App. Div. 333, affd. 307 N. Y. 778; Chast Realty Corp. v. Frost, 198 Misc. 814).
The rent control statute provides that a landlord sued for excess rent has the burden of proving absence of willfulness and the taking of practicable precautions on his part (State Residential Rent Law, § 11, subd. 5).
“ Willful ’’ means only ‘‘ consciously ” or “ knowingly ’’ (Howland v. Firoz Realty Corp., 72 N. Y. S. 2d 734, affd. 273 App. Div. 960; Milgrim v. Marie Dore, Inc., 98 N. Y. S. 2d 187).
The language used by Chief Justice Bybhes of this august court in Milgrim v. Marie Dore, Inc. (supra), is most appropriate : “ ‘ The word “ willful,” as used in the statute, means knowingly, not malevolently. Criminal intent need not be shown; conscious violation of the order is enough. ’ ” Indeed, as was emphasized in the latter case, the parties are not in pari delicto, and the law was intended to protect a tenant who yields to unlawful exactions because of his helplessness. Such is the situation here.
In this case the defendant offered no evidence of actual professional use of the apartment by the plaintiffs and has failed to sustain its burden of proving the absence o'f willfulness or the taking of practicable precautions on its part. Accordingly, treble damages under the statute are amply justified here. The facts in this case are similar to those established in other cases in this and other courts where such damages were granted tenants (Hutchison v. Green, 139 N. Y. S. 2d 468, affd. 142 N. Y. S. 2d 230, supra; Ansbro v. 180 Riverside Corp., N. Y. L. J., March 3, 1955, p. 697, col. 1, supra; Saidman v. Fitzner, N. Y. L. J., Sept. 29,1949, p. 651, col. 5, affd. without opinion, N. Y. L. J., Feb. 24, 1950, p. 685, col. 1; Shaw v. Reberta Properties, N. Y. L. J., May 19, 1950, p. 1791, col. 1, supra; Appel v. Public Service Holding Corp., N. Y. L. J., May 10,1949, p. 1672, col. 8; Milgrim v. Marie Dore, Inc., supra).
*921 With respect to plaintiffs’ claim for damages for $40 given to the landlord for a new stove, plaintiffs contend that this amount was in fact exacted from them by defendant as a condition to his undertaking what he was obligated to do. Support for this contention is found in the admission by defendant through Glassheim, that upon reletting the apartment in question in August, 1955, he, Glassheim, obtained from the new tenants an increase in rent based upon, among other things, the installation of the “ new stove.” In fact, defendant admitted this “ new stove ” was the same stove for which plaintiffs in this case had paid defendant $40, which sum represented half the costs of the stove.
Plaintiffs contend that under section 24 of the State Bent and Eviction Regulations, that the maximum legal rent included certain essential services and equipment, which the landlord had to provide. In this case, such services and equipment included a stove, painting and decorating. The landlord refused to provide the stove unless plaintiffs shared the expense, and refused to paint and decorate. Plaintiffs were compelled to do what the landlord illegally refused to do; but for the ‘‘ professional ’’ lease the landlord would have had to paint. If the “ professional ” lease was illegal, then the reasonable cost to which they were put in painting and decorating is an item of damage to the extent that the work done by plaintiffs satisfied the landlord’s statutory duty.
In Ansbro v. 180 Riverside Corp. (supra) this court awarded treble damages to tenants upon facts similar to the instant case. The court, in its decision, also stated: “ That part of complaint which sought recovery by plaintiff for painting is disallowed as no proof that it was done or of its reasonable cost was adduced ”. Although Justice Carlin’s decision in the Ansbro case is not holding to this effect, the meaning of that portion of his decision referred to supports plaintiffs’ contention here. However, I am not at all convinced that the plaintiffs are entitled to recover 'for the painting and decorating.
Plaintiffs are entitled to recover treble damages for each month within the year immediately preceding this action. This amounts to $35 per month for eleven months, and that trebled is equal to the sum of $1,155, plus interest for the appropriate dates. The plaintiffs are also entitled to recover the sum of $40 forced from them. This action was well prepared and expertly tried by the attorney for the complainants and I am inclined to conclude that a counsel fee in the sum of $200 is well merited.
Therefore, judgment may be entered for the plaintiffs in the sum of $1,195, together with counsel fees in the sum of $200.