Patrick J. Picariello, J.
This action was instituted by plaintiff to recover treble damages and counsel fees for alleged over *117 charges in rent covering a period of two years commencing July 1,1959 and ending June 30,1961.
Prior to May 21, 1959 defendant was the owner of a 65-unit rent-controlled apartment dwelling located at 924 West End Avenue in New York City.
A portion of the basement area in said premises was allocated and set aside for general storage space for the common use of all tenants and, albeit gratuitously furnished by defendant, became an ‘ ‘ essential service ’ ’ within the meaning of subdivision 4 of section 3 and section 24 of the State Rent and Eviction Regulations of the Temporary State Housing Rent Commission.
In 1957-1958 defendant constructed five fireproof storage rooms in the basement of said premises at a considerable distance away from the general storage space used in common by the tenants. Four of these rooms measured approximately 100 square feet and the fifth measured about 136 square feet. Built with the permission of the Department of Buildings according to plans filed with said department and in accordance with the Rules and Regulations of the Fire Department, these rooms are constructed of three-inch cylinder blocks with walls from floor to ceiling; each room has its own door, individually keyed, and is completely fireproof. These rooms were constructed without loss of any of the general storage room basement space area which had been allocated to the tenants for their own personal use.
On May 21,1959, after some negotiations, plaintiff and defendant entered into and simultaneously executed two separate lease agreements. The first (the lease for the subject apartment) provided for a term to commence June 1, 1959 and to terminate May 31, 1961. The rent reserved therein, $212 monthly, was admittedly the maximum rent established and registered with the Rent Commission. The other (the lease for storage room No. 3 in the basement of the premises, one of the rooms constructed in 1957-1958, supra) originally provided for a term to commence June 1, 1959 and to terminate May 31, 1963. The rent reserved therein was $20 monthly. However, after discussing the leases with defendant’s representative, plaintiff’s then attorney added a paragraph to the said lease, before execution, reading as follows: “ 28. This lease valid only while tenant is in actual occupancy of Apartment 81 of the premises.’5'
Plaintiff took possession of both the apartment and the storage room on June 1, 1959. She thereupon proceeded to pay the landlord the sum of $232 per month, that is, $212 for the use of the apartment and $20 for use of the storage room. Although the landlord presented separate bills for the apartment and the storage room, plaintiff made one monthly payment, by check.
*118 The testimony and evidence in the case clearly indicate that the tenant was never denied or deprived of the use of the genera] storage space in the basement allocated for the general use in common by the tenants. The evidence further indicates minimal use of the storage room by the tenant for the first year of the term. In the second year of the term, however, plaintiff stored therein trunks filled with theatrical accoutrements, professional paraphernalia and other material utilized by her in the pursuit of her professional carrer, all of which she could not have stored in the general storage space in the basement allocated for the general use in common by the tenants. The evidence further shows that plaintiff had previously stored this merchandise in a public warehouse for which she paid various charges.
Plaintiff now claims (1) that she was obliged to sign the two leases aforesaid providing for a total rent of $232 per month in order to obtain possession of her apartment and (2) that this agreement between the parties in essence provided for an increased rent for increased services, facilities or equipment and was subject to the approval of the Bent Administrator, and that since no such approval had been obtained by the defendant, the same constituted an overcharge of $20 per month for a period of two years, totaling $480, and that she is entitled to treble damages, increasing the amount to $1,440 plus reasonable counsel fees.
Defendant’s position is that these private storage rooms were constructed as a separate commercial venture and that their rental did not come under the control and jurisdiction of the Commercial Bent Law since they were constructed in 1958-1960, which latter fact was conceded by the plaintiff, and that the same were not part of, and did not constitute “ essential services ” relating to the housing accommodation, and further, even if use of the private storage room was considered as part of the “ essential services,” the absence of an order fixing the maximum rent under both leases, or the absence of an order fixing the rental overcharge, rendered plaintiff’s complaint premature and necessitated its dismissal as a matter of law.
The court shall first consider plaintiff’s second claim (2). This claim is predicated upon the provisions of section 11 of the Emergency Housing Bent Control Law (L. 1946, ch. 274, as amd. by L. 1954, ch. 443), the applicable part of which reads as follows: “If any landlord who receives rent from a tenant violates a regulation or order prescribing the maximum rent with respect to the housing accommodations for which such rent *119 is received from such tenant, the tenant paying such rent may * * * bring an action against the landlord on account of the overcharge ”. The applicable State Rent and Eviction Regulations issued pursuant thereto and in furtherance thereof provide as follows: ‘ ‘ Increased service or facilities, substantial rehabilitation, major capital or other improvements. The Administrator may grant an appropriate adjustment of a maximum rent where he finds that: a. the landlord and tenant by mutual voluntary written agreement, subject to the approval of the Administrator, agree to a substantial increase in dwelling space or an increase in the services, furniture, furnishings or equipment provided in the housing accommodations” (§ 33, subd. 1; italics added). “ Evasion. The maximum rents and other requirements provided in these Regulations shall not be evaded * * * by modification of the services furnished or required to be furnished with the housing accommodations, or otherwise.” (§ 62; italics added.) “If any landlord who receives rent from a tenant violates a regulation or order prescribing a maximum rent with respect to the housing accommodations for which such rent is received from such tenant, the tenant paying such rent may * * * bring an action against the landlord ” (§ 71, subd. 2; italics added).
The fundamental issue appears to be whether the use of the storage room constituted “ an increase in the services, furniture, furnishings or equipment provided in the housing accommodations ” in which case the Rent Administrator’s approval for an increase in rent therefor was required. (State Rent and Eviction Regulations, § 33, subd. 1; italics added.)
“ Housing accommodation ” is defined in the State Rent and Eviction Regulations as follows: ‘ ‘ Any building or structure, permanent or temporary, or any part thereof, occupied or intended to be occupied by one or more individuals as a residence, home, sleeping place * * * and all services, privileges, furnishings, furniture and facilities supplied in connection with the occupation thereof ” (State Rent and Eviction Regulations, § 2, subd. 2; italics added).
It is significant to note that “ essential services,” as provided in the above regulations, relate only to such services as are related to and/or with housing accommodations or as may be connected with the occupation of the housing accommodation itself. It is the court’s opinion, based on the facts and circumstances in this case, that the use of the private storage room was in no way related to and/or with the apartment rented by the tenant, nor was it in any way connected with tenant’s occupancy of the apartment.
*120 In connection herewith it is important to note that the apartment building contained 65 separate units and that but 5 private storage rooms were constructed.
Moreover, and upon all the facts and circumstances peculiar to this case, it appears rather farfetched successfully to argue that the use of the private storage room was part of “ housing accommodation ’ ’ herein, as described in the Bent and Eviction Begulations. Consequently, the use of the said room could not be considered a modification of “ essential services ” related to and/or connected with the housing accommodation or with the plaintiff’s occupancy of the apartment. Therefore, in the court’s opinion, the consent or approval of the Bent Administrator was not required. Even if such had been the case, the court could not pre-empt the Bent Administrator from any such action. There was testimony that such action has been initiated by plaintiff and that the matter is still pending in the office of the Bent Administrator.
Plaintiff cites the cases of Powell v. Park Lex. Realty Corp. (304 N. Y. 960, affg. 280 App. Div. 136); Jaffe v. Glay Realty Corp. (2 Misc 2d 915) and Felton v. Leo-Dor Realty Corp. (285 App. Div. 460) in support of her claim. These cases are easily distinguishable from the case at bar. In the Powell case the subject apartment had been registered as “ residential ” and the court found, as a fact, that the rental thereof for “ professional purposes ’ ’ was merely a subterfuge on the part of the landlord to exact more rent from the tenant. There was ample evidence in that case of the landlord’s duplicity and subterfuge which rightfully warranted a judgment for the tenant for overcharges in rent. It should be noted that in that case the housing-accommodation itself was involved. In the same tenor does the court consider the case of Jaffe, where again the court found that the attempt of the landlord to rent an apartment registered for residential purpose was a willful subterfuge utilized by the landlord to evade rent control statutes applicable to leases of residential premises. There again there was ample evidence to substantiate the judgment of the trial court. There, too, the housing accommodation itself was involved. And, also, in the case of Felton the landlord failed to file a registration statement for the housing accommodation which had resulted from a conversion of a one-family house to a rooming house.
Statutes are often enacted in general terms. Decisional law particularizes and refers to a given set of facts, and although the court will give generous interpretation to the statute in order to effectuate its salutary purposes, great care must be taken to avoid interpolation of anything not intended by the *121 Legislature. The court cannot conceive of any maxim, or principle of law, enunciated in decisions of courts, which can be generally applicable to all cases; each case must be decided on its own facts and circumstances; each is peculiar in itself. The result is that there is no dearth of cases reported, and generally the Judge in a particular case is left to make his own decision as to whether or not there has been a violation.
With respect to plaintiff’s first claim, except for plaintiff’s hearsay testimony that her then attorney had advised her by telephone after discussing the leases with defendant’s representative, “If you want the apartment, you must sign both leases,” there was insufficient evidence, if, indeed, any, to enable the court to make such a finding.
What the plaintiff really seeks by this argument is a rescission of the lease for the storage room. It may be that the plaintiff may be able to obtain this relief in another forum where the issue can be thoroughly aired and explored and both parties’ equities ascertained and adjusted. However, this court is not vested with such jurisdiction. (N. Y. City Mun. Ct. Code, § 6.)
In view of the above, a determination of the other issues raised by the parties to this litigation becomes academic.
Judgment for defendant. dismissing plaintiff’s complaint, with costs.