REBECCA KWOCZKA, Plaintiff, *v.* DRY DOCK SAVINGS BANK et al., Defendants.

Civil Court of the City of New York, Trial Term, New York County, November 30, 1966.

*Stillerman & Stillerman* (*Lottie Stillerman* of counsel), for plaintiff.  *Jacob Goodman* and *Sidney Eisen* for Solomon Kwoczka, defendant.  *Joseph E. Kaht* for Dry Dock Savings Bank, defendant.

EDWARD J. GREENFIELD, J.  In this action plaintiff sues in Civil Court to recover a savings bank deposit of $7,899.66 maintained in the name of her late husband in trust for one of his sons by a prior marriage.  She maintains that she is entitled to the deposit because the transfer to her stepson by means of a Totten Trust was illusory, had been disaffirmed by decedent during his lifetime, and that in fact she was a joint tenant in the property.

Plaintiff testified that she assisted her late husband in the operation of a retail glass business, all profits from which were deposited in a savings account held jointly by both of them.  There was also a small checking account, the balance of which was received by plaintiff.

On January 28, 1964 the joint savings account, then amounting to $7,636.55, was closed, and the proceeds were transferred to a new account, the one now in suit, entitled " Benjamin Kwoczka in trust for Solomon Kwoczka ".  A few days later, in February 1964, plaintiff opened an account in her own name in trust for *her* son by a prior marriage with $1,500 which had been with-

drawn from the joint account, and then opened a second such account in trust for her son with $2,503.10, the proceeds of another joint account with Benjamin Kwoczka, the source of which had been a Social Security refund check payable to both.

The passbooks were kept in a closet at home to which both had access, but plaintiff testified that she was the one who actually made further deposits in the account in suit from time to time. On February 7, 1965 Mr. Kwoczka died. The following day there was a tearful scene when plaintiff produced the passbook to the account her husband had set up in his name in trust for his son Solomon, turned it over to Solomon, and asked him, as a " good boy ", to give her $2,000 of the proceeds. When nothing was forthcoming, she instituted this suit to obtain the entire deposit.

Although plaintiff attempted to adduce testimony that the transfer of funds by her late husband from the joint account to the newly created trust account was done furtively without her knowledge, and in fraud of her rights, and that, when it was discovered, the husband remorsefully promised to restore the funds to the joint account, much of that testimony was barred as violative of the ban on communications with a decedent now embodied in CPLR 4519, and as to the rest, the court finds such testimony not to be credible. Despite the alleged promise, Mrs. Kwoczka maintained the passbook as it was, continued to make deposits, and voluntarily relinquished it to her stepson. The facts in the case are much more indicative of a mutually conceived and executed plan by Mr. and Mrs. Kwoczka, who were getting on in years, to terminate their joint accounts and make a disposition of their property, so that each would leave something to his or her own child, instead of it all going to the survivor and the survivor's next of kin.

Thus, all their joint accounts were terminated in January and February of 1964, and Mr. Kwoczka, who had been in business for many years, put some $7,600 in his own name in trust for his son, while Mrs. Kwoczka, who worked with him for the last 15 years of his life, put $4,000 in her name in trust for her son. It is apparent that Mrs. Kwoczka was aware of the termination of the joint accounts and the new passbook, but acquiesced, or at least did nothing effectively to protest it while Mr. Kwoczka was still alive.

Plaintiff's professed belief that as long as she held the passbook, however the account may have been denominated, title to the proceeds remained in her was of course not only erroneous in law, but affords no basis for the maintenance of the present lawsuit.

The one thing which is abundantly clear in this emotionally charged proceeding is that plaintiff, who sues as if she had title to the deposit in question, does not presently have title, and before she can recover she must change the present status of things. In brief, although her short-form complaint is framed in terms of an action at law for a sum of money only, to accomplish that recovery she must first invoke the powers of equity, to make that which ought to be that which is. Thus she encounters difficulties at the threshold, for the Civil Court has sharply restricted equitable powers, and no degree of semantic juggling can cause this court to blink the fact that, before a money judgment can be rendered, equity must intervene either to set aside an alleged illusory transfer in fraud of her widow's rights, or to declare the continuing existence of a joint tenancy which the documents recite on their face were terminated two and a half years ago.

Section 202 of the New York City Civil Court Act confers upon this court jurisdiction over actions and proceedings for the recovery of money up to $10,000. Beyond that, the court has only such additional powers as are expressly given it by the Constitution of the State of New York (art. VI, § 15), and '' such equity jurisdiction as may be provided by law ''. Absent a specific grant of power, this court may not exercise the ordinary powers of a court of equity.

The equitable powers given to the court for foreclosure, specific performance, reformation and rescission in real property actions where the value of the property does not exceed the monetary jurisdiction of the court are carefully spelled out in section 203. Section 204 gives the court its powers with respect to summary proceedings to recover possession of real property. Section 205 gives the court jurisdiction over an action of interpleader, but despite the fact that this case involves conflicting claims to a bank deposit, it is not, properly speaking, an interpleader action. (CPLR 1006.)

Equitable defenses may be asserted to defeat any cause of action (§ 905), but affirmative relief is quite another matter. (*Murphy* v. *Serial Fed. Sav. & Loan Assn.*, 30 Misc 2d 450, 454.)

With respect to counterclaims, the court is given the power to rescind or reform the transaction on which plaintiff's cause of action is founded (N. Y. City Civ. Ct. Act, § 208). Equitable powers in connection with provisional remedies are spelled out in section 209. The precision with which equitable powers are conferred upon the court is illustrative of a clear intent to deprive the court of any equitable powers not expressly granted.

No matter how artfully or artlessly phrased in terms of an

action for a sum of money only, the undeniable fact is that before the plaintiff can recover anything she must set aside the existing Totten Trust. The court has no power to call part of it illusory and part of it good. (*Matter of Halpern,* 303 N. Y. 33, 40; *Matter of Friesing,* 123 N. Y. S. 2d 207.) Yet even if the Totten Trust were set aside as the result of an illusory transfer in fraud of plaintiff's rights as a widow, she would be entitled to only one third of the net estate. To recover the entire deposit as she claims would require invalidating the Totten Trust and declaring the funds as part of an existing joint tenancy. Clearly this requires equitable intervention, and the exercise of powers not expressly conferred on this court. (Cf. *Greco* v. *Clebourne Apts.,* 39 Misc 2d 116, 121.)

The cases cited by plaintiff to support her contention are inapposite. *Matter of Bricker* v. *Krimer* (13 N Y 2d 22) to the effect that one joint tenant is liable to another for a withdrawal in excess of his moiety, is a case in which the joint tenant, and not some third-party recipient was being sued. *Steinfeld* v. *Dry Dock Sav. Bank* (Civil Ct., N. Y., Index No. 149788/65) involved a claim to a bank deposit, but the defendant who prevailed was, as here, the named beneficiary of a Totten Trust.

The fact that all the parties are before the court does not, as plaintiff suggests, give the court the right to adjudicate all issues between them. That some courts may do so does not mean that a court of limited powers may. *Matter of Lowenstein* (138 N. Y. S. 2d 420) deals with the power of the Surrogate's Court to direct a payment to a spouse who elects to take against the will the proceeds of an illusory Totten Trust. And *Schmidt* v. *Rebhann* (108 N. Y. S. 2d 441) holds that a surviving spouse has the right to bring an *equitable* action to set aside an alleged illusory transfer. No precedents are cited for the Civil Court exercising such jurisdiction.

Section 212 of the Civil Court Act is not the catch-all which confers upon the court equitable powers not expressly granted. That section provides: " In the exercise of its jurisdiction the court shall have all of the powers that the supreme court would have in like actions and proceedings."

Of course, the comparable powers of the Supreme Court are exercisable by the Civil Court only in those cases over which the Civil Court can exercise jurisdiction in the first instance. Section 212 is not an elastic clause which can be stretched to extend the jurisdiction of the Civil Court every time pressures are exerted. (Cf. *Chase Watch Corp.* v. *Heins,* 284 N. Y. 129, 134.) Merely by omitting mention of any demand for equitable relief in the pleadings in an action for money, the Civil Court

does not acquire or have conferred upon it equitable powers of rescission or reformation with which it was not otherwise clearly endowed. The powers referred to are incidental to the exercise of proper jurisdiction. The grant of section 212 is procedural and interstitial; it is not substantive or jurisdictional.

The court therefore is not only disinclined to strike down the Totten Trust on the evidence presented, but lacks the power to do so. Upon this record, it clearly appears that upon the death of Benjamin Kwoczka the title to the deposit in the Dry Dock Savings Bank devolved upon his son, Solomon Kwoczka, the designated beneficiary of the trust. Judgment for the defendants.