OPINION OF THE COURT
Philip S. Straniere, J.
Defendant’s counsel had appeared on September 11, 2003 in the clerk’s office of the courthouse seeking to examine and copy subpoenaed hospital records of the plaintiff in preparation for a trial of the above matter. The subpoenaed records were delivered to the courthouse pursuant to CPLR 2306 (b). Counsel was given two forms by the court clerk to be completed before being permitted to examine the records. One form, labeled “Affidavit In Support Of A Requisition For An Order For The Examination Of Subpoenaed Records,” asks the person to identify himself or herself and disclose his or her relationship to the case. This form is then approved by a judge before examination of the records by the applicant. There is nothing inherently wrong with this procedure. It allows, the court to keep track of who in fact has inspected the file just in case, as happens on a rare occasion, part of the file decides to take a walk and gets locked out of the building. The court notes that although the form is called an “affidavit” there is no place on the document for a notarization or other indication that someone issued an oath to the affiant. It also does not contain the language which would permit an attorney to examine the file by making an affirmation only (CPLR 2106).
The second form which the clerk is asking attorneys to complete is the one that is troublesome. It is designated “Waiver and Authorization.” It requires that either the plaintiff or the defendant as well as their counsel consent to have opposing counsel review medical records subpoenaed to court usually by the party that is now in fact seeking to examine them. The form indicates that its purpose is to “absolve the above-listed persons from liability under Public Health Law, Article 27-F, Sections 2780-2787.” The document requires the signature of the plaintiff or defendant and their counsel. Although not labeled an affidavit, the “Waiver and Authorization” does contain the standard jurat for a notary. The clerk adopted this procedure as *291 a result of a memorandum issued by Judge Charles E. Ramos, dated February 2, 1993, when he was the supervising judge of Civil Court, New York County. In that memorandum Judge Ramos stated: “Confidential information contained in medical records shall not be disclosed without an order of the court, after all parties have been afforded an opportunity to be heard on consent.”
The intention of the Public Health Law, Judge Ramos and the clerk is to protect the confidentiality regarding the medical condition of certain persons. While I understand and share the concern being expressed by Judge Ramos in his memorandum, I must respectfully disagree with the procedure being adopted. Article 27-F of the Public Health Law governs “HIV and AIDS Related Information” and was passed with the privacy rights of those individuals in mind; the rule enacted by the Civil Court covers all medical records and as set forth below, it is not in compliance with the applicable statutes so it does not in fact accomplish the purpose for which it was established. The procedure places an unnecessary burden on counsel and the courts and sets over 200 years of American jurisprudence on its ear. It has always been the rule that by bringing a personal injury action the plaintiff is putting his or her medical condition into issue and it has long been considered a waiver of any privacy rights in that regard. This includes past injuries, current physical and mental problems and anything that might affect the plaintiffs life expectancy, ability to work, and future medical expenses. Generally the failure to reveal information relevant to those injuries will lead to the preclusion of such testimony at trial and the ultimate dismissal of the action. In fact the Uniform Civil Rules for the New York City Civil Court contain extensive steps that must be complied with in order for a party to place medical records and reports into evidence at trial and of which the failure to comply may lead to preclusion of that evidence (22 NYCRR 208.13).
The Court of Appeals in Green v Montgomery (95 NY2d 693 [2001]) analyzed several situations in which a privilege is waived where an individual affirmatively places protected information or conduct in issue and specifically dealt with civil suits for personal injuries. The Court noted (at 700): “In Dillenbeck v Hess (73 NY2d 278, 287), for example, this Court stated that a litigant waives the physician-patient privilege of CPLR 4504 when, 'in bringing or defending a personal injury action, that person has affirmatively placed his or her mental or physical *292 condition in issue’ (see also Koump v Smith, 25 NY2d 287, 294). Otherwise, as we explained in Koump, a party would be able to use the privilege ‘as a sword rather than a shield,’ and a party ‘should not be permitted to assert a mental or physical condition in seeking damages . . . and at the same time assert the privilege in order to prevent the other party from asserting the truth’ (25 NY2d, at 294).”
The clerk’s memorandum is in conflict with the law as set forth by the Court of Appeals. The memorandum does not indicate what is meant by “confidential information.” Is it limited to HIV and AIDS as set forth in Public Health Law § 2780 et seq. or does it also include mental health information which the Legislature has also recognized is entitled to confidentiality as set forth in Mental Hygiene Law § 33.13 (see CPLR 2302 [a])? Is information only “confidential” if designated so in legislation or does the individual party have a right to claim something is “confidential” such as prior abortions or the existence of a “communicable” disease? If the “waiver and authorization” being used is designed to conform to the requirements of the Public Health Law it appears that it does not do so since it fails to contain the specific language necessary to secure the release of confidential HIV information as outlined in Public Health Law § 2780 (9).
This court has previously proposed in other decisions that it would be a better procedure to require proof of service of the subpoena on all parties be filed with the court with a notice contained in the subpoena that unless an objection to examination is raised by motion on notice, the records will be examined by opposing counsel on a date certain. The Legislature has recently enacted such a procedure when it amended CPLR 3120, 3122 and enacted new CPLR 3122-a, all effective September 1, 2003. This legislation was designed to bring New York state law into conformity with the provisions of federal Health Insurance Portability and Accountability Act (HIPAA) and the regulations put forth by the Secretary of Health and Human Services in that regard.
CPLR 3122, as amended, no longer requires a court order for the service of a discovery subpoena duces tecum on a nonparty. This court has recently held in Campos v Payne (2 Misc 2d 921 [2003]) that the changes set forth in the September 1, 2003 amendments to the CPLR apply to all subpoenas, including those on the eve of trial or else the privacy and notice protections of the amendments could be negated by an attorney wait *293 ing until trial to seek the documents. Since September 1, 2003 the following procedure is in place in New York:
“(a) Within twenty days of service of a notice or subpoena duces tecum under rule 3120 or section 3121, the party or person to whom the notice or subpoena duces tecum is directed, if that party or person objects to the disclosure, inspection or examination, shall serve a response which shall state with reasonable particularity the reasons for each objection. If objection is made to part of an item or category, the part shall be specified. A medical provider served with a subpoena duces tecum requesting the production of a patient’s medical records pursuant to this rule need not respond or object to the subpoena if the subpoena is not accompanied by a written authorization by the patient. Any subpoena served upon a medical provider requesting the medical records of a patient shall state in conspicuous bold-faced type that the records shall not be provided unless the subpoena is accompanied by a written authorization by the patient. The party seeking disclosure under rule 3120 or section 3121 may move for an order under rule 3124 or section 2308 with respect to any objection to, or other failure to respond to or permit inspection as requested by, the notice or subpoena duces tecum, respectively, or any part thereof.” (CPLR 3122 [a].)
CPLR 3120 adds a new requirement of mandating that a copy of every subpoena be served not only upon the custodian of the records but on all other parties. In addition once the subpoenaed records are delivered, notice must be sent to all parties of what records were actually produced and of their availability for inspection and copying.
As the procedure being employed by the clerk of the court is currently structured, and without taking into account the change in the discovery procedure effective September 1, 2003, on every case where records are delivered to the court, a judge will in the first instance have to review the records and their contents for confidentiality issues without any information as to whether or not there has been any objection to the viewing and copying of the subpoenaed records. Why judges are reviewing sealed records delivered to the court prior to permitting a party to view them is another issue (CPLR 2306 [b]). I know my *294 handwriting is illegible enough to have gotten me into medical school; however, I did not go; so what gives me or any other judge sufficient training not only to read and interpret the records but also to understand “medicalese”? And if not labeled “confidential” do I or any other judge have the expertise to review the file and garnish exactly what is confidential and what is not? The standard either under the common-law waiver rule or under the new subpoena regulations should be that the subpoenaed records are subject to examination by opposing counsel unless someone objects; not that they cannot be viewed without prior written or court ordered consent. After September 1, 2003, the fact that the medical provider has delivered the subpoenaed record is presumptive evidence that the CPLR has been complied with and necessary authorizations were presented to the medical provider so that the documents could be released. The court should only be involved in the process if there was an objection to the subpoena or a refusal to deliver the records.
Under the common law there were numerous cases in which courts upheld the right of defendants to examine the plaintiffs’ medical history. In Trevino v Davis (283 AD2d 156 [1st Dept 2001]) the Court denied a protective order to the plaintiff in regard to his medical records because the plaintiff at his oral deposition did not object to questions asked him as to his health status. The Court noted that the plaintiff could have refused to answer and thereby required the defendant to put the issue before the Court which would have required a ruling on the extent of the discovery and disclosure that would be allowed. By not previously objecting, plaintiff put his medical status in the record and the defendant was not precluded from obtaining medical authorizations. There is nothing in the record of the case before this court to indicate that there even exists any issue of confidential medical records to even trigger the use of this form. The health service provider that sent the records has not indicated that they contain any confidential information.
Further, the court, in Dwight B. v Board of Educ. of City of Newburgh (157 Misc 2d 1004, 1007 [Sup Ct, Orange County 1993]), correctly held that “[t]aken together, Public Health Law § 2781 (1) and CPLR 3121 allow for disclosure and use of HIV information when the medical condition of a party is at issue.” It went on to state: “[i]n bringing this action plaintiff has placed into issue not only his past and present medical condition, but seeks also to argue the permanency of his injuries. That anyone, *295 let alone a young boy, has tested HIV positive, is a cause for great sadness. However, suppressing this information from a jury which is charged with judging his medical condition and, if appropriate, placing an award based on life expectancy, would not serve the interests of justice, and would certainly violate defendant’s right to a fair trial.”
In addition the Public Health Law anticipates to a degree the problem raised by defendant’s application and attempts to deal with it in a way which would eliminate the necessity for the current duplicate form and negate a judge’s need to have gone to medical school. Public Health Law § 2782 (5) (a) provides: “Whenever disclosure of confidential HIV related information is made pursuant to this article . . . such disclosure shall be accompanied or followed by a statement in writing which includes the following or substantially similar language: ‘This information has been disclosed to you from confidential records which are protected by state law. State law prohibits you from making any further disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law. Any unauthorized further disclosure in violation of state law may result in a fine or jail sentence or both. A general authorization for the release of medical or other information is not sufficient authorization for further disclosure.’ An oral disclosure shall be accompanied or followed by such a notice within ten days.”
Clearly the recent changes to the CPLR reflect the purposes of HIPAA and the Public Health Law to place the obligation to protect the person’s confidentiality on the health or social service provider that is forwarding the record and not the court system. Under the Public Health Law, if the provider receives a subpoena and includes “confidential” records in its response, it has an obligation to disclose that fact and attach a notice in that regard. The existence of such a notice would alert the court clerk or the person who subpoenaed the file, that the records are confidential and if examination of them is to take place, permission of either the party or the court is needed. It would also notify the applicant that if they disclose the information they are subject to penalty. Parenthetically, why is the clerk opening the mail and examining the contents of subpoenaed records prior to anyone appearing to look at them? If the records are sent to the court in the manner set forth in CPLR 2306 (b), that is with sufficient information on the outside of the envelope to identify the litigation, there would be no need to open it. *296 The records could be filed without further examination by the clerk. CPLR 2301 requires that a trial subpoena shall state on it that the records to be delivered to the court have on its face a statement that the papers to be delivered are to be accompanied by a copy of the subpoena. If that rule is complied with or the equivalent information is placed on the outside of the subpoenaed records or envelope containing the records, the clerk of the court will have no need to open the records.
In fact it appears that under the Public Health Law if a hospital disclosed the protected information upon receipt of a “general authorization” and that authorization did not contain a specific consent to release the confidential information, the hospital or health service provider and not necessarily the recipient would be exposed to liability. This article of the Public Health Law refers only to “authorizations” and not to subpoenas. So an argument can be made that the limitation on the disclosure is not applicable to subpoenaed records.
In support of this fact is CPLR 2302 (a) which specifically requires a subpoena to be “court ordered” only in the case of a “patient’s clinical record” maintained pursuant to Mental Hygiene Law § 33.13, a statute that also has confidentiality requirements. This requirement was added to CPLR 2302 in 1989. The section was again amended in 1997. However, in neither of those legislative enactments was a similar requirement for the Public Health Law included even though article 27-F was added to the Public Health Law in 1988. This exclusion from the CPLR by the Legislature is further indication that the Public Health Law confidentiality requirements do not apply to subpoenaed records and are limited only to HIV and AIDS cases. See also Public Health Law § 18, “Access to patient information” (not to be confused with Public Health Law § 18, “Registration and notification of boards of directors”), which also does not specifically exclude HIV related information from the definition of patient information which is subject to disclosure (Public Health Law § 18 [1] [e]) even though this section has been amended four times since 1988. In fact in spite of setting forth a definition “patient information” with restrictions on the use of that information, Public Health Law § 18 (10) provides: “Nothing contained in this section shall restrict, expand or any way limit the disclosure of any information pursuant to articles twenty-three, thirty-one and forty-five of the civil practice law and rules . . . .” This section is further evidence of the Legislature’s intent to limit what qualifies as a “confidential” record.
*297 Finally, Public Health Law § 2785 sets forth the procedures and parameters for a court to follow in authorizing the disclosure of confidential HIV related information. In subdivision (4) of this section the notice procedure to be followed before holding a hearing on the issue is delineated. However, paragraph (c) of that subivision states: “Service of a subpoena shall not be subject to this subdivision.” This leads to the conclusion that no hearing is required in regard to subpoenaed records. Subpoenaed records sent by a hospital, or a department or bureau of a municipal corporation or the state to the court are to remain there “for inspection pursuant to the rules or order of the court” (CPLR 2306 [b]). Query: does the memorandum establishing the procedure in question herein violate the prohibition enunciated by the Court of Appeals that judges are without authority to create additional procedural safeguards not permitted by statute and to impose them generally without regard to the facts of a particular case (Matter of Brusco v Braun, 84 NY2d 674 [1994]; Mennella v Lopez-Torres, 91 NY2d 474 [1998])?
Perhaps the new requirements of the CPLR outlined above will eliminate some of the problems presented by the current procedure in the clerk’s office. By requiring notice to the parties that records are being subpoenaed (CPLR 3120) and giving the recipient of the subpoena the opportunity to object to disclosing the records and to outright ignore the subpoena (CPLR 3122), the Legislature will have eliminated some of the inherent problems that existed by judges trying to integrate the Public Health Law confidentiality concerns with the CPLR and the opposing parties’ common-law discovery rights. In any case the clerk’s function is only to receive the records and document who is seeking to view or copy the subpoenaed records. After September 1, 2003 all medical records delivered to the court will have had to have contained the proper authorizations and will be subject to examination and copying by opposing counsel.
What makes defendant’s current application interesting is that the records were subpoenaed prior to September 1, 2003 and the change in the law, and apparently were delivered to the court before that date. Defendant’s counsel however sought to examine them after the date of the new statutes. The clear intent of the Legislature is to have the medical and other subpoenaed documents provided only after notice to all parties and serving of the subpoena with a copy of the authorization upon the medical provider. Defendant undoubtedly could have examined these documents before September 1, 2003 at the *298 courthouse under the old rules and for whatever reasons chose not to. In order to be in compliance with the spirit of the new legislation, defendant’s counsel is required to give notice to the opposing party that counsel intends to examine and copy the records. The notice shall comply with CPLR 3120 as to its contents and can be served either by personal delivery, fax transmission or overnight mail so long as a reasonable amount of time is given to the opposing party in the event that party wants to object. The court says a “reasonable amount of time” since factors such as when the records were delivered and when the trial is scheduled are relevant issues in how much notice should be given.
Defendant’s counsel is permitted to examine the records without obtaining the consent of the plaintiff so long as notice of its intent is given to opposing counsel.
In addition, the defendant’s counsel is permitted to copy the subpoenaed records in this case and in all other cases without permission of the court so long as both the records are not marked “confidential” and proof of service of the notice or subpoena as required by CPLR 3120 is filed with request to examine and copy the records delivered to court. Since CPLR 3120 permits the notice or subpoena to contain a request for permission to copy the records as part of the discovery process, it makes no sense that records delivered to the courthouse for trial purposes should not also be available for copying so long as there has been compliance with the notice requirements of the statutes. The changes in the CPLR effective September 1, 2003 apply to all subpoenaed records whether delivered to the court before or after that date. The memorandum of February 2, 1993 has been rendered moot by these changes. Prior to examination of any records, counsel must establish and submit proof that reasonable notice of the intention to do so has been given to all other parties.
In the future the clerk of the court is directed to only require the court’s permission before permitting examination of the subpoenaed records by counsel. Absent a clear indication by the health service provider forwarding the records that confidential material is contained therein, there is no need to require additional consents or the intervention of the court before permitting such inspection. In addition to the protections of the CPLR concerning subpoenaed records and discoverable information, the Code of Professional Responsibility provides ethical standards that will prohibit opposing counsel from revealing *299 confidential information inadvertently disclosed that is irrelevant to the issues in the litigation.