*611 OPINION OF THE COURT
Robert F. Julian, J.
The plaintiff moves for a protective order, requesting that certain allegedly irrelevant medical information be redacted from his/her records, and that only the redacted records be supplied to the defendants.
The plaintiff was injured in an accident subject to the No-Fault Law. Plaintiff alleges in paragraph 13 of his/her complaint that plaintiff sustained “a serious injury as defined in Insurance Law § 5102.” Without further limitation, this may include injuries which will persist for some time into the future and/or are permanent.
The plaintiff has been HIV positive since 1995. Plaintiff moves to seek the redaction of his/her medical records to eliminate reference to that fact. The defense has not received any formal notice of plaintiffs status and can and does only object generally to the application. The court does not know if the defendant has learned from the plaintiff, or otherwise, of this health condition.
The plaintiff has put his/her physical condition in controversy by alleging injuries and demanding compensation therefore. By so doing, plaintiff waives his/her confidentiality, but only as to those medical matters relevant to the controversy. By placing one’s condition in controversy one is not thereby required to sign a “blank check” for medical records’ disclosure. (Carter v Fantauzzo, 256 AD2d 1189 [4th Dept 1998].) A plaintiff who commences a personal injury action has waived the physician-patient privilege to the extent that his physical or mental condition is affirmatively placed in controversy (see, Cynthia B. v New Rochelle Hosp. Med. Ctr., 60 NY2d 452, 456-457 [1983]; McGuane v M.C.A., Inc., 182 AD2d 1081, 1082 [1992]). That waiver, however, “does not permit wholesale discovery of information regarding the protected party’s physical or mental condition. The waiver of the physician-patient privilege made by a party who affirmatively asserts a physical condition in its pleading does not permit discovery of information involving unrelated illnesses and treatments” (Iseman v Delmar Med.-Dental Bldg., 113 AD2d 276, 279 [1985]).
Preliminarily, it is hereby ordered
(1) that all pleadings, papers, affidavits, judgments, orders of the court, briefs and memoranda of law which are part of the instant application or the decision thereon are to be sealed and not made available to any person, except to the extent neces *612 sary to conduct any proceedings in connection with the determination of whether to grant or deny the application, including any appeal.
(2) It is further ordered that all subsequent proceedings in connection with this application shall be conducted in camera, and the county clerk’s file shall be delivered to this court for immediate redaction and confidentiality protection.
(3) It is further ordered that, where appropriate to prevent the unauthorized disclosure of confidential information, any pleadings, papers, affidavits, judgments, orders of the court, briefs and memoranda of law which are part of the instant application or the decision thereon shall not state the name of the plaintiff, which shall be redacted therefrom, but rather the plaintiff is given anonymous status and hereafter shall be referred to as Ann Doe in all situations in this proceeding.
(4) It is further ordered that neither the content and nature of plaintiffs condition nor the specific statutory article relied upon here, i.e., Public Health Law article 27-F, nor this decision and order itself, is permitted to be disclosed to any person not privy to this decision and order, which is to say, to no one other than counsel for the parties, the court, and the court’s law clerk.
The court has determined that this decision will be hand delivered, first to counsel for the plaintiff so that plaintiff may be on notice of the court’s determination and make such further application as plaintiff may be so advised prior to the publication of this decision, again by hand delivery, to counsel for the defense, which shall be made 10 days thereafter in the absence of further application by the plaintiff, and defense counsel is hereby barred from conveying this decision and order to any person, other than an appellate printer/publisher and the appropriate personnel and officials of the Appellate Division, Fourth Department, pending further proceedings as hereinafter ordered.
These extraordinary measures are required in view of article 27-F of the Public Health Law, which creates a scheme of privilege and confidentiality regarding an individual’s HIV status. Section 2785 provides:
“1. Notwithstanding any other provision of law, no court shall issue an order for the disclosure of confidential HIV related information, except a court of record of competent jurisdiction in accordance with the provisions of this section.
“2. A court may grant an order for disclosure of *613 confidential HIV related information upon an application showing: (a) a compelling need for disclosure of the information for the adjudication of a criminal or civil proceeding; (b) a clear and imminent danger to an individual whose life or health may unknowingly be at significant risk as a result of contact with the individual to whom the information pertains; (c) upon application of a state, county or local health officer, a clear and imminent danger to the public health; or (d) that the applicant is lawfully entitled to the disclosure and the disclosure is consistent with the provisions of this article . . .
“5. In assessing compelling need and clear and imminent danger, the court shall provide written findings of fact, including scientific or medical findings, citing specific evidence in the record which supports each finding, and shall weigh the need for disclosure against the privacy interest of the protected individual and the public interest which may be disserved by disclosure which deters future testing or treatment or which may lead to discrimination.”
The court finds that an application for disclosure of plaintiffs HIV status would have to be pursuant to subdivision (2) (a), “a compelling need for disclosure of the information for the adjudication of a . . . civil proceeding.” Further, pursuant to subdivision (2) (d), the defendant is “lawfully entitled to the disclosure” and the disclosure does not violate any other provision of the article, if subject to proper protections as have been and will be further set out.
Section 2785 (5) mandates a fact-finding proceeding in order to arrive at a determination of “compelling need.”
The complaint, as drafted, by making reference to Insurance Law § 5102, put the defendants on notice of possible claims for future damages. By making such claim, the plaintiff has placed his/her life expectancy in issue. Factfinders in such cases are required to find how many years the plaintiff might be expected to suffer from his/her injuries. They are also instructed on life expectancies as an aid to calculating damages. The plaintiff’s burden of proof includes life expectancy, and defendants, on notice of a condition which could affect life expectancy, might wish to mount a defense to future damages based on claimed shortened life expectancy.
In order to make the necessary findings as provided in Public Health Law § 2785 (5), and to assess the relevance of the medi *614 cal information sought to be redacted, the court orders a hearing pursuant to CPLR 2218 and Public Health Law § 2785 (5).
The following disclosures, required for the said hearing, are all subject to the protections and strictures on disclosure specified above.
The plaintiff will, within 30 days hereof, submit a particularized statement of the injuries sustained, including the future injuries, their alleged duration and magnitude, and damages alleged, so that the ambit of relevance may be understood.
Within 60 days of the date hereof, plaintiff will provide expert disclosure of his/her intended proof regarding:
(1) Plaintiffs life expectancy; deviation, if any, from the EJ.I. Life Expectancy tables concerning the same; and any other matters which may appear to the plaintiff to be material which might implicate plaintiffs status.
(2) Plaintiffs claim of future pain and suffering, the specifics of the said anticipated pain and suffering, and the basis for the said claim.
If plaintiff does in fact claim future damages, then plaintiff will supply all medical records to the defense for utilization by a specified expert only, and otherwise subject to all above protections. Defense counsel will, within 60 days of receipt of a copy of plaintiffs expert disclosure, provide expert disclosure responsive to plaintiffs and setting forth any other material claims allegedly related to plaintiffs status. In the event the defense disclosures raise issues not addressed by the plaintiffs expert, the plaintiff shall have 30 days to respond to new matter raised in the defense disclosures. The defense shall also be entitled to conduct physical examinations of the plaintiff, including the orthopaedic injuries and the possibly life-shortening condition. The examining physician(s) will be entitled to all records, unredacted, but will receive the same under the restrictions set forth in this order.
Based on those submissions the court will fashion the next stage in the proceeding and schedule the hearing and direct its structure. Such proceedings may include a hearing directly on the life expectancy issue, or may first require a Frye-Daubert hearing to ascertain whether the science claimed to be in clash is sufficiently adequately founded to be admissible.
Balancing the rights of these parties is not a simple task. This case involves an all-terrain vehicle accident and orthopaedic injuries suffered as a result. The apparent relevance of plaintiffs *615 HIV status would presumably be in regard to his/her life expectancy and thus the extent of future damages allowable. There is the potential that a trial about the orthopaedic injuries would be diverted into one about the impact of HIV status on life expectancy, featuring present and foreseeable treatment modalities. The potential distractions associated with these collateral issues are obvious. Yet the defendants have the right to defend. At the same time the Legislature has spoken loudly and clearly: HIV status is privileged, and its disclosure should be severely restricted and should be seen to serve the public interest when made. To require disclosure in a case such as that at hand could be thought to discourage the testing and self-awareness that the Legislature wishes to promote. The court has reviewed the legislative history as contained in the Bill Jacket for Public Health Law § 2785 (L 1988, ch 584). The history contains no mention of a legislative intent to restrict the traditionally expansive access which defendants have to a plaintiffs medical records in a personal injury case. In view of these difficulties, the court has decided to proceed one step at a time, guarding plaintiffs privacy as closely as possible, while acknowledging the rights of the defendants. It is possible that the procedure set forth by the court will demonstrate no real medical dispute by the parties regarding life expectancy and that a stipulation regarding life expectancy is achievable.
The court is mindful of the thoughtful consideration of this issue given in Favor v Horne (2 Misc 3d 289 [2003]), although in a very different context. The court there (at 291-292) refers to the Court of Appeals decision in Green v Montgomery (95 NY2d 693 [2001]) and the basic policy of waiver in personal injury cases.