719 S.E.2d 722 (2011)
STATE of West Virginia ex rel. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner,
v.
Honorable Thomas A. BEDELL, Judge of the Circuit Court of Harrison County; Lana S. Eddy Luby; and Carla J. Blank, Respondents.
No. 35738.
Supreme Court of Appeals of West Virginia.
Submitted January 25, 2011.
Decided April 1, 2011.
Dissenting Opinion of Justice Benjamin July 22, 2011.
*726 E. Kay Fuller, Michael M. Stevens, Martin & Seibert, L.C., Martinsburg, WV, for the Petitioner, State Farm Mutual Automobile Insurance Company.
David J. Romano, J. Tyler Slavey, Romano Law Office, Clarksburg, WV, for the Respondent, Carla J. Blank.
Tiffany R. Durst, Pullin, Fowler, Flanagan, Brown, & Poe, PLLC, Morgantown, WV, for the Respondent, Lana S. Eddy Luby.
James D. Lamp, Matthew J. Perry, Lamp O'Dell Bartram Levy Trautwein & Perry, PLLC, Huntington, WV, for Amicus Curiae, National Insurance Crime Bureau.
*727 Jill Cranston Bentz, Jacob A. Manning, Dinsmore & Shohl, LLP, Charleston, WV, for Amicus Curiae, West Virginia Insurance Federation.
D.C. Offutt, Jr., Offutt Nord, PLLC, Huntington, WV, for Amicus Curiae, West Virginia Mutual Insurance Company.
Mary Jane Pickens, General Counsel, Victor A. Mullins, Associate Counsel, Offices of the West Virginia Insurance Commissioner, Charleston, WV, for Amicus Curiae, Jane L. Cline, West Virginia Insurance Commissioner.
Todd A. Mount, Shaffer & Shaffer, PLLC, Madison, WV and Lee Murray Hall, Jenkins Fenstermaker, PLLC, Huntington, WV and Jeffrey A. Holmstrand, Flaherty Sensabaugh & Bonasso, PLLC, Wheeling, WV, for Amicus Curiae, Defense Trial Counsel of West Virginia.
DAVIS, Justice:
The petitioner herein, State Farm Mutual Automobile Insurance Company (hereinafter referred to as "State Farm"), requests this Court to issue a writ of prohibition to prevent the Circuit Court of Harrison County from enforcing its October 25, 2010, Protective Order. By the terms of that order, the circuit court restricted the manner in which State Farm would be permitted to use the medical records of the respondent herein, Carla J. Blank (hereinafter referred to as "Mrs. Blank"), and those of Mrs. Blank's deceased husband, Lynn Robert Blank (hereinafter referred to as "Mr. Blank"). Before this Court, State Farm contends that the circuit court exceeded its authority in issuing the protective order requested by Mrs. Blank. Upon review of the parties' arguments, the record designated for our consideration, and the pertinent authorities, we deny the requested writ of prohibition.

I.

FACTUAL AND PROCEDURAL HISTORY
The instant proceeding marks the second time these parties have been before this Court within the past twelve months. At issue herein, as well as in the prior case, is the circuit court's entry of a protective order limiting the manner in which State Farm may use the medical records of the respondent herein, Mrs. Blank, and her decedent, Mr. Blank, in its defense against Mrs. Blank's lawsuit.
On March 20, 2008, the vehicle in which Mr. and Mrs. Blank were traveling on Route 20 in Buckhannon, West Virginia, was struck head-on by a vehicle being driven by Jeremy Jay Thomas (hereinafter referred to as "Mr. Thomas"). Mr. Blank and Mr. Thomas both died as a result of the injuries they sustained in the collision; Mrs. Blank and Mr. Thomas' passenger were both injured, but they both survived the accident. Thereafter, Mrs. Blank filed a lawsuit against Mr. Thomas' estate, whose interests are represented herein by Mr. Thomas' mother, Lana S. Eddy Luby (hereinafter referred to as "Ms. Luby"), seeking redress for the personal injuries she sustained as well as for the wrongful death of her deceased husband, Mr. Blank, Mrs. Blank's lawsuit was filed in the Circuit Court of Harrison County.
During the course of the litigation, State Farm, Mr. Thomas' automobile insurer, sought discovery of Mr. and Mrs. Blank's medical records. In response to this request, Mrs. Blank sought a protective order to ensure the confidentiality of the requested medical records. By order entered February 11, 2010, the Circuit Court of Harrison County granted the requested protective order. From this ruling, State Farm sought a writ of prohibition from this Court claiming that the protective order was too restrictive and interfered with its ability to maintain claims files as required by West Virginia insurance law. This Court agreed that the protective order hindered State Farm's ability to comply with its statutory obligations and granted a writ of prohibition to prevent the circuit court from enforcing its February 11, 2010, protective order. See State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell, 226 W.Va. 138, 697 S.E.2d 730 (2010) (hereinafter referred to as "State Farm I"). Specifically, we held that a protective order could not interfere with an insurer's obligations to comply with regulatory requirements *728 for the maintenance of insurance claims files:
A court may not issue a protective order directing an insurance company to return or destroy a claimant's medical records prior to the time period set forth by the Insurance Commissioner of West Virginia in §§ 114-15-4.2(b) and 114-15-4.4(a) of the West Virginia Code of State Rules for the retention of such records.
Syl. pt. 7, 226 W.Va. 138, 697 S.E.2d 730. With respect to the protective order issued by the circuit court on February 11, 2010, we also found that Mrs. Blank had failed to demonstrate good cause for the order's issuance insofar as it prevented State Farm from electronically storing medical records and information. See State ex rel. Shroades v. Henry, 187 W.Va. 723, 728, 421 S.E.2d 264, 269 (1992) (observing that W. Va. R. Civ. P. 26(c) requires "good cause be shown for a protective order," which consists of "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" (internal quotations and citation omitted)). In this regard, we determined that, "[i]n the absence of any factual support, the vague fears articulated by Mrs. Blank do not constitute the `particular and specific demonstration of fact' that this Court requires from a party seeking a protective order." State Farm I, 226 W.Va. at 148, 697 S.E.2d at 740 (citation omitted).
Following the issuance of this Court's decision in State Farm I, the parties resumed preparations for the upcoming trial in this case, which was scheduled to begin on December 13, 2010. On September 28, 2010, Mrs. Blank submitted a proposed "Temporary Protective Order Granting Plaintiff Protection for Her Confidential Medical Records and Medical Information," to which State Farm objected. The circuit court held a hearing on Mrs. Blank's requested protective order and, on October 25, 2010, granted her relief. In language that is strikingly similar to its earlier, February 11, 2010, protective order, the circuit court again severely restricted the manner in which State Farm could use the medical records and information of Mrs. Blank and her decedent. While the second protective order imposed time limits upon State Farm's ability to retain the subject medical records that would permit it to comply with the requirements of W. Va.C.S.R. § 114-15-4.2(b) and § 114-15-4.4(a) and did not prohibit State Farm from electronically storing such information, the order is, in all other respects, substantially the same as the previous order. In addition to the limitations restricting State Farm's ability to divulge the contents of the medical records to third-parties unless said persons have signed nondisclosure agreements and the provisions delineating the manner in which the medical records ultimately are to be returned to Mrs. Blank's counsel or destroyed, both of which restrictions were contained in the first protective order, the second protective order additionally "PROHIBITS the Defendants [State Farm and Ms. Luby] from sharing any confidential, non-public medical information to [sic] the NICB [National Insurance Crime Bureau], or any third party in general, without the Plaintiffs' [Mrs. Blank, individually, and on behalf of her husband's estate] consent."
From this ruling, State Farm petitions this Court for a writ of prohibition to prevent the circuit court from enforcing its second protective order.[1]

II.

STANDARD OF REVIEW
State Farm comes before this Court to request the issuance of a writ of prohibition to prevent the circuit court from enforcing its October 25, 2010, protective order. Typically, "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having *729 such jurisdiction exceeds its legitimate powers. W. Va.Code 53-1-1." Syl. pt. 2, State ex rel. Peacher v. Sencindiver, 160 W.Va. 314, 233 S.E.2d 425 (1977). Accord Syl. pt. 1, Crawford v. Taylor, 138 W.Va. 207, 75 S.E.2d 370 (1953) ("Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari."). Where, as here, the error alleged relates to a court's issuance of a discovery order outside of the scope of its authority, prohibition is a proper vehicle by which to seek relief from this Court: "A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syl. pt. 1, State Farm Mut. Auto. Ins. Co. v. Stephens, 188 W.Va. 622, 425 S.E.2d 577 (1992).
The standard by which this Court determines whether to grant a writ of prohibition in a particular case considers many factors.
In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.
Syl. pt. 4, State ex rel. Hoover v. Berger, 199 W.Va. 12, 483 S.E.2d 12 (1996). Mindful of these considerations, we proceed to consider State Farm's request for prohibitory relief.

III.

DISCUSSION
In support of its request for prohibitory relief, State Farm contends that the circuit court exceeded its authority by (1) issuing its second protective order even though Mrs. Blank had not demonstrated good cause; (2) requiring State Farm to violate the affirmative reporting requirements of W. Va.Code § 33-41-5(a) (2004) (Repl.Vol.2006); (3) requiring State Farm to destroy business records; and (4) imposing burdensome and/or impossible requirements. We will address each assertion in turn.

A. Good Cause
State Farm first argues that the circuit court erred by awarding Mrs. Blank a protective order because she did not demonstrate good cause for its issuance. In this regard, State Farm contends that this Court, in our decision in State Farm I, concluded that Mrs. Blank had not demonstrated good cause sufficient to support the issuance of a protective order. State Farm interprets State Farm I as requiring Mrs. Blank to demonstrate good cause by showing either that State Farm has failed to comply with the governing privacy rules or that it intends to do so. State Farm I, 226 W.Va. at 147, 697 S.E.2d at 739. Alternatively, State Farm indicates that this Court found that Mrs. Blank could establish good cause by showing how the governing privacy rules are insufficient to ensure the confidentiality of her medical records. Id. However, continues State Farm, because this Court determined that Mrs. Blank had not made the requisite showing of any of these foundations for good cause, we concluded that the circuit court improperly had entered the first protective order in this case.
Following the issuance of this Court's decision in State Farm I, Mrs. Blank requested the circuit court to issue a second protective *730 order, which is the order at issue herein. However, State Farm represents that Mrs. Blank has not further developed the record to provide the circuit court with any additional information to establish good cause and, thus, to warrant the protective order's issuance. State Farm states that, nevertheless, the circuit court granted this second protective order, again without Mrs. Blank having established the requisite good cause therefor. Accordingly, State Farm urges this Court to invalidate the second protective order based upon this lack of good cause.
Ms. Luby essentially echoes State Farm's arguments regarding Mrs. Blank's failure to demonstrate good cause for the issuance of a protective order in this case. Furthermore, to the extent that Mrs. Blank has contended that her interest in the privacy of her medical records provides good cause for the issuance of a protective order, Ms. Luby rejects this reasoning because sufficient protections already exist to protect the Blanks' medical records. See State Farm I, 226 W.Va. at 146, 697 S.E.2d at 738 (discussing state and federal privacy protections). See also Morris v. Consolidation Coal Co., 191 W.Va. 426, 446 S.E.2d 648 (1994) (recognizing cause of action against third-party who wrongfully induces physician to disclose patient's medical records); Allen v. Smith, 179 W.Va. 360, 368 S.E.2d 924 (1988) (allowing patient to maintain cause of action against psychiatrist for unauthorized release of patient's medical records pursuant to valid subpoena).
For her part, Mrs. Blank responds that the circuit court properly awarded her a protective order because she has demonstrated good cause for its issuance. In this regard, Mrs. Blank contends that she has a right to the privacy of her medical records, and that the circuit court considered this expectation of privacy to constitute good cause warranting a protective order. Moreover, Mrs. Blank suggests that the existence of such a privacy right in medical records is bolstered by the enactment of the Health Insurance Portability and Accountability Act ("HIPAA") and the corresponding qualified protective orders required by its provisions. See generally 45 C.F.R. § 164.512(e)(1)(v) (2002) (Rev.Vol.2010).[2]
Having established the procedural framework within which this issue arises, we must consider whether Mrs. Blank has established good cause sufficient to justify the circuit court's issuance of the second protective order. Although the record before us is necessarily limited owing to the posture of this case as an original jurisdiction proceeding, we nevertheless conclude that Mrs. Blank has demonstrated good cause to warrant the second protective order's issuance.
Rule 26 of the West Virginia Rules of Civil Procedure sets forth general guidelines for the conduction of discovery. Subsection (c) of this Rule discusses protective orders and provides:
Upon motion by a party or by the person from whom discovery is sought, including a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the circuit where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(1) That the discovery not be had;
(2) That the discovery may be had only on specified terms and conditions, including a designation of the time or place;
(3) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
(4) That certain matters not be inquired into or that the scope of the discovery be limited to certain matters;
(5) That discovery be conducted with no one present except persons designated by the court;

*731 (6) That a deposition after being sealed be opened only by order of the court;
(7) That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;
(8) That the parties simultaneously file specified documents or information enclosed in sealed envelopes to be open as directed by the court.
If the motion for a protective order is denied in whole or in part, the court may, on terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.
W. Va. R. Civ. P. 26(c) (emphasis added).
With respect to the requirements of Rule 26(c), we previously have held that "[i]ssuance of a broad protective order, based upon the assertion of a blanket privilege against discovery, without scrutiny of each proposed area of inquiry and without giving full consideration to a more narrowly drawn order constitutes abuse of discretion under West Virginia Rule of Civil Procedure 26(c)." Syl. pt. 7, Bennett v. Warner, 179 W.Va. 742, 372 S.E.2d 920 (1988). Accordingly, "[w]e have required those seeking protective orders to make more than a mere assertion of privilege before a protective order will be granted. . . . A . . . blanket assertion of privilege is far too broad to stand without a more specific showing as to the need for the protective order." AT & T Commc'ns of West Virginia, Inc. v. Public Serv. Comm'n of West Virginia, 188 W.Va. 250, 252, 423 S.E.2d 859, 861 (1992) (quotation and citation omitted).
Thus, a protective order will not be freely given simply because a party possesses a protected interest in the information sought to be discovered. Rather, the requesting party must also demonstrate that good cause exists to support the protective order's issuance. See Harris v. Amoco Prod. Co., 768 F.2d 669, 683-84 (5th Cir.1985) (commenting that "[i]f the party from whom discovery is sought shows `good cause,' the presumption of free use [of the material sought through discovery] dissipates, and the district court can exercise its sound discretion to restrict what materials are obtainable, how they can be obtained, and what use can be made of them once obtained" (citations omitted)). In this regard, we have observed that
"[t]he rule [Rule 26(c)] requires that good cause be shown for a protective order. This puts the burden on the party seeking relief to show some plainly adequate reason therefor. The courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause."
State ex rel. Shroades v. Henry, 187 W.Va. 723, 728, 421 S.E.2d 264, 269 (1992) (quoting 8 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 2035, at 264-65 (1970) (footnotes omitted)) (additional citations omitted). Likewise, it has been noted that
Rule 26(c) requires good cause be shown for issuance of a protective order. The burden is on the party seeking relief to show some plainly adequate reason for a protective order. This burden requires establishing particular and specific facts, as distinguished from conclusory statements, in order to establish good cause.
Franklin D. Cleckley, Robin Jean Davis, & Louis J. Palmer, Jr., Litigation Handbook on West Virginia Rules of Civil Procedure § 26(c)[b], at 678 (3d ed.2008) (footnote omitted). Based upon the foregoing authorities, we therefore hold that Rule 26(c) of the West Virginia Rules of Civil Procedure requires a showing of good cause to support the issuance of a protective order. The party requesting the protective order bears the burden of demonstrating good cause by establishing particular and specific facts; mere conclusory statements are not sufficient to demonstrate good cause. Accord Syl., State ex rel. Johnson v. Tsapis, 187 W.Va. 337, 419 S.E.2d 1 (1992) (adopting six-factor test for determining existence of good cause to support issuance of protective order pursuant to W. Va. R. Civ. P. 26(c)(7) to safeguard trade secrets).
In the case sub judice, State Farm complains that Mrs. Blank did not demonstrate *732 good cause to support the circuit court's entry of its second protective order. Specifically, State Farm suggests that our prior opinion in State Farm I required Mrs. Blank to demonstrate "either a past failure of State Farm to comply with the state privacy rule and Insurance Commissioner regulations or a reasonable basis that State Farm intended to disseminate private medical information without [Mrs. Blank's] consent in the future." Citing State Farm I, 226 W.Va. at 147, 697 S.E.2d at 739 (emphasis added by State Farm). Moreover, State Farm indicates that Mrs. Blank also could establish good cause by showing "why the Insurance Commissioner's rule governing confidentiality . . . is insufficient." Id. While State Farm is correct in its interpretation of the specific facts we determined to be sufficient to establish good cause for the issuance of a protective order in State Farm I, State Farm, nevertheless, is mistaken as to the reach of our decision.
Prior to our decision in State Farm I, the circuit court entered its first protective order in this case. In that first protective order, the circuit court did not recite the good cause demonstrated by Mrs. Blank for the order's issuance. Rather, the first protective order does not address good cause, make a finding thereof, or otherwise mention this prerequisite to the issuance of a protective order. Owing to the circuit court's silence on the existence of good cause, we determined, in State Farm I, that if Mrs. Blank desired a protective order to prevent State Farm from electronically storing her medical records, as well as those belonging to her deceased husband, then she must establish good cause therefor as required by Rule 26(c). Our commentary regarding the need for good cause pertained to only that portion of the protective order that was addressed in our prior opinion, i.e., the prohibition of electronic storage of medical records by State Farm.[3] We did not conclude, as State Farm urges herein, that Mrs. Blank had failed to establish good cause for the issuance of any and all protective orders; rather, our prior opinion clearly explains that Mrs. Blank failed to demonstrate good cause for the issuance of the protective order terms discussed therein, which precluded State Farm from electronically storing the Blanks' medical records. In this regard, we discussed the good cause requirement of Rule 26(c) and Mrs. Blank's burden thereunder as follows:
Although Mrs. Blank contends that she needs a protective order to ensure that her medical information will remain private, she fails to present the "particular and specific demonstration of fact" required under Rule 26(c) to establish good cause for the order. See Shroades, 187 W.Va. at 728, 421 S.E.2d at 269. Rather, Mrs. Blank merely alleges, in a conclusory manner, that the electronic storage of her records will allow State Farm to disseminate them to third-parties and "keep them indefinitely in a manner in which all State Farm employees could access them." She presents no evidence, however, that State Farm has failed to comply with West Virginia Code of State Rules § 114-57-15.1, nor any facts which would show a reasonable basis for believing that State Farm intends to disseminate her "nonpublic personal health information" without her consent in the future. Indeed, Mrs. Blank has not even presented any evidence regarding State Farm's policies for the retention of such records, nor does she attempt to explain why the Insurance Commissioner's legislative rule governing the confidentiality of a claimant's medical records is insufficient to protect her information.
. . . .
In the absence of any factual support, the vague fears articulated by Mrs. Blank do not constitute the "particular and specific demonstration of fact" that this Court requires from a party seeking a protective order. See id.

State Farm I, 226 W.Va. at 147, 697 S.E.2d at 739 (footnote omitted). Thus, it is clear that our discussion of the lack of good cause for the issuance of the first protective order in State Farm I was limited to our consideration *733 of the specific terms of the subject protective order, i.e., prohibiting electronic storage of medical records, and that we did not contemplate whether good cause might exist for the issuance of a subsequent protective order.
Following our opinion in State Farm I, Mrs. Blank requested a second protective order to ensure the confidentiality of her, and her deceased husband's, medical records, which protective order the circuit court granted. In its second protective order, the circuit court explicitly detailed the good cause demonstrated by Mrs. Blank for the order's issuance:
[A]fter considering Rule 26 of the West Virginia Rules of Civil Procedure, the Court holds that the Plaintiffs [Mrs. Blank, individually, and as personal representative of her deceased husband's estate] have demonstrated a "particular and specific demonstration of fact," as well as good cause, for the issuance of an appropriate protective order. Specifically, the Court notes that medical records are private in nature and are protected by privilege between the treating physician or care provider and the patient. Further, medical records have the potential to contain facts that are embarrassing to the patient, and the law recognizes that the dissemination of medical records must be done with the patient's consent. Further, the Supreme Court recognized the same, "here, none of Mrs. Blank's medical records will become public unless she consents to their dissemination or until they are introduced at trial." [State Farm I, 226 W.Va. at 147-48, 697 S.E.2d] at 739-740. Finally, the Defendants [State Farm and Ms. Luby], both in oral argument before the Supreme Court and in their proposed "Protective Order," have stated that the Plaintiffs are entitled to a reasonable protective order. It is the terms of the Order that the Defendants have issue with, not the valid justification for a general protective order.
Therefore, the Plaintiffs have demonstrated a "particular and specific demonstration of fact," as well as good cause, for the issuance of an appropriate protective order. W. Va. R. C[iv]. Pro[c]., R. 26.
That Mrs. Blank did not supplement the record with additional evidence in support of her demonstration of good cause for the order's issuance is of no moment insofar as the circuit court, upon the record then before it, determined that Mrs. Blank had sustained her burden of showing good cause for a protective order. Because Mrs. Blank established good cause through particular and specific facts of her expectation of privacy in her, and her husband's medical records, the circuit court's decision to grant her a second protective order was proper. Finding no abuse of the circuit court's discretion, we deny the writ of prohibition requested by State Farm as to this issue. See Syl. pt. 1, State Farm Mut. Auto. Ins. Co. v. Stephens, 188 W.Va. 622, 425 S.E.2d 577.

B. Statutory Obligations
State Farm also argues that the circuit court improperly granted Mrs. Blank a second protective order when the order's terms interfere with State Farm's statutory obligations under W. Va.Code § 33-41-5(a) (2004) (Repl.Vol.2006) and Illinois insurance law. In this regard, State Farm contends that the second protective order prevents it from complying with its reporting requirements under W. Va.Code § 33-41-5, subsection (a) of which imposes upon insurers an affirmative duty to report suspected fraudulent activity.[4] To ascertain whether fraud allegedly has occurred, State Farm represents that insurers maintain claims files and compare claims that appear to be suspicious. However, because the protective order requires the ultimate destruction or return of the discovered material, State Farm asserts that it will not be able to retain complete claims files and, thus, will not be able to fulfill its statutory obligation to report fraud as required by W. Va.Code § 33-41-5(a).
*734 Similarly, State Farm represents that, as an Illinois insurance corporation, it must comply with Illinois law. Under Illinois law, State Farm is required to retain its claims files forever unless it receives specific permission from the Illinois Director of Insurance to destroy those files. See 215 Ill. Comp. Stat. Ann. 5/133(2) (1995) (West Main Vol.2000).[5] As such, State Farm says that if it complies with the circuit court's second protective order, it will be in violation of the record retention laws of the State of Illinois.
Although Ms. Luby does not respond to this argument, Mrs. Blank disputes State Farm's assertions that the circuit court's protective order hampers its ability to report suspected fraudulent activity or to comply with the document retention policies of Illinois insurance law. In this regard, Mrs. Blank contends that State Farm did not argue before the circuit court that a protective order could violate its reporting obligations under W. Va.Code § 33-41-5(a) or its document retention duties under Illinois law. Because the circuit court has not yet had an opportunity to consider this argument in rendering its decision to enter its second protective order, Mrs. Blank argues that this issue is not ripe for this Court's consideration. Citing Whitlow v. Board of Educ. of Kanawha Cnty., 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993).
Upon our review of the record in this case, we have been unable to locate anything to indicate that State Farm raised the issue of W. Va.Code § 33-41-5(a) requirements or Illinois law compliance before the circuit court or that the circuit court had the opportunity to consider the effect its second protective order would have upon State Farm's statutory obligations under these provisions. We previously have observed that "a party must alert a tribunal as to perceived defects at the time such defects occur," and if the tribunal is not so alerted, we will not "`consider an error which is not properly preserved in the record nor apparent on the face of the record.'" Hanlon v. Logan Cnty. Bd. of Educ., 201 W.Va. 305, 315, 496 S.E.2d 447, 457 (1997) (quoting State v. Browning, 199 W.Va. 417, 425, 485 S.E.2d 1, 9 (1997)). More specifically, we have held that "`[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' Syllabus Point 2, Sands v. Security Trust Co., 143 W.Va. 522, 102 S.E.2d 733 (1958)." Syl. pt. 2, Duquesne Light Co. v. State Tax Dep't, 174 W.Va. 506, 327 S.E.2d 683 (1984). Accord Syl. pt. 2, Cameron v. Cameron, 105 W.Va. 621, 143 S.E. 349 (1928) ("This court will not review questions which have not been decided by the lower court."). This is so because
[o]ur general rule . . . is that, when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered. . . . The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made. . . . Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues [before this Court]. Finally, there is also a *735 need to have the issue refined, developed, and adjudicated by the trial court, so that we may have the benefit of its wisdom.
Whitlow v. Board of Educ. of Kanawha Cnty., 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993) (citations omitted).
In light of these authorities, then, we conclude that State Farm is not entitled to a writ of prohibition on this point. While it is quite laudable that State Farm is concerned about its ability to fulfill its statutory obligations under both West Virginia and Illinois law, State Farm nevertheless neglected to alert the circuit court as to the conundrum it might face in accomplishing these tasks under the terms of the second protective order. Because the circuit court was not permitted to consider this issue in the course of formulating the terms of its second protective order, it would be inappropriate for this Court to inform the circuit court it has acted wrongly when it did not have an opportunity to address the matter in the first instance. Therefore, because State Farm did not raise this nonjurisdictional issue below, instead raising it for the first time before this Court, we deny the requested writ of prohibition on this ground.

C. Destruction of Business Records
State Farm's next disagreement with the circuit court's second protective order concerns the scope of the order's reach. Specifically, State Farm objects to the order's directive to return or destroy "all medical records, and medical information or any copies or summaries thereof."[6] In short, State Farm contends that this language essentially requires State Farm to destroy its business records, i.e., claims files, to the extent that such files might contain any reference to the medical records disclosed by Mrs. Blank because such references could be construed as constituting "medical information." According to State Farm, this inability to maintain its claims files hinders its ability to defend future cases that have lengthy statutes of limitations and/or that are filed in federal court. See, e.g., W. Va.Code § 55-2-6 (1923) (Repl.Vol.2008) (establishing ten year statute of limitations for breach of contract); W. Va.Code § 55-2-4 (1923) (Repl.Vol.2008) (tolling statute of limitations for minors and persons under disability); W. Va.Code § 55-2-15 (1923) (Repl.Vol.2008) (providing savings clause for persons under disability). See also Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y.2004) (recognizing duty to retain records when litigation is reasonably anticipated).
Ms. Luby also disagrees with the circuit court's inclusion of "medical information" within the scope of its second protective order insofar as this directive adversely impacts attorney-client communications. In this regard, counsel for Ms. Luby states that, in order to keep her client fully informed, she needs to share medical information about the Blanks with her client to explain her defense of the case against her client. However, to the extent that counsel communicates this medical information to her client in writing, such correspondence becomes part of the client's file. As such, counsel for Ms. Luby asserts that she cannot, following the expiration of the protective order, then return or destroy this information because a client's closed file belongs to the client, and not to the client's attorney. Citing W. Va. Office of Lawyer Disciplinary Counsel, L.E.I.2002-01: Retention and Destruction of Closed Client Files (Mar. 8, 2002). Therefore, to the extent that the protective order extends to "medical information," Ms. Luby's counsel complains that the terms of the protective order make it difficult to comply both with the court's order and her ethical obligations to her client.
Mrs. Blank responds by challenging State Farm's suggestion that her personal, private, and confidential medical records are State Farm's business records. Merely because she has provided her records to State Farm by order of the court during the course of litigation, Mrs. Blank maintains that such records retain their nature as her private medical records and are not converted into State Farm's business records simply by virtue of their disclosure.
*736 Furthermore, Mrs. Blank disagrees with State Farm's contention that it is required to destroy its entire claims files at the appointed time. Mrs. Blank contends that she never requested the destruction of State Farm's claims files in their entirety and such is not necessary so long as all medical records and information have been removed therefrom. Moreover, Mrs. Blank faults State Farm for not seeking clarification of the term "medical information" from the circuit court.
We understand State Farm's concern in this regard not to be that the actual medical records of Mrs. Blank and her deceased husband constitute business records of State Farm. Rather, it appears that State Farm's protest relates to the fact that, under the second protective order's terms, any documents, notes, writings, correspondence, and the like within State Farm's claims files or business records that contain "medical information" referenced in the disclosed medical records also is required to be returned or destroyed pursuant to this provision of the protective order. It is this reach of the protective order's provisions to the claims files and business records of State Farm to which State Farm objects. Ms. Luby echoes these concerns insofar as the protective order's inclusion of "medical information" within its reach would require the return or destruction of documents her counsel has prepared in preparation for litigation or in the course of representing her.
In its second protective order, the circuit court directed that, upon conclusion of the appropriate period established by W. Va.C.S.R. § 114-15-4.2(b), all medical records, and medical information or any copies or summaries thereof, will either be destroyed with a certificate from Defendants' counsel as an officer of the Court that the same has been done, or all such material will be returned to Plaintiff's counsel without retention by Defendants' counsel or any other person who was furnished such materials and information pursuant to the terms of this Protective order. Specifically, the records shall be kept no longer than the provisions of § 114-15-4.2(b) require, with the time period beginning to run at the conclusion of this case, including any possible appellate litigation. The time period shall be the lesser of "the current calendar year plus five (5) calendar years," or "from the closing date of the period of review for the most recent examination by the commissioner," or "a period otherwise specified by statute as the examination cycle for the insurer." § 114-15-4.2(b). Provided however should Defendants' counsel desire to retain a copy of the protested [sic] medical records produced in this case, the same shall be permitted as long as those protected medical records are maintained in a sealed manner in Defense Counsel's file and not used for any other purpose whatsoever except upon further order of this Court or in response to lawful process after notice to the protected person, or in response to a lawful order of another Court with jurisdiction, or upon written consent of the protected person whose medical records and information is protected herein.
(Emphasis added; footnote omitted). In summary, the subject protective order requires the destruction or return of "all medical records, and medical information or any copies or summaries thereof." The query posed by State Farm, then, is whether this language includes documents that have been prepared by it and which may contain references to the discovered medical material or whether such documents are outside the protective order's reach. We conclude that the reach of the protective order is evident from the list of documents specifically enumerated therein.
In order to ascertain the precise documents that are included within the second protective order's scope, we must review the terms of the order, itself. We begin our inquiry, then, with the standard of review by which our analysis is governed. It has been recognized that "[t]he interpretation of a court order is a question of law, which we review de novo" In re Langenfeld, 160 N.H. 85, 89, 993 A.2d 232, 236 (2010) (citation omitted). Accord Prins v. Director of Revenue, 333 S.W.3d 17, 19-20 (Mo.Ct.App.2010); In re Salesky, 157 N.H. 698, 702, 958 A.2d 948, 952 (2008).
*737 Next, in conducting our plenary review, we are guided by the general rules of construction which dictate that we consider the language of the lower court's order on par with that of other legal instruments. In other words, "[c]ourt orders and judgments are to be construed under the same rules of interpretation as those applied to other written instruments." McLeod v. McLeod, 723 S.W.2d 777, 779 (Tex.App.1987) (citation omitted). Accord In re Marriage of Brown, 776 N.W.2d 644, 650 (Iowa 2009); Pare v. Wyeth, Inc., 870 A.2d 378, 381 (Pa.Super. Ct.2005).
Thus, as is the case when we examine statutes,[7] contracts,[8] and the like, when we review lower court orders, we must determine whether the order's language is ambiguous. See Pare, 870 A.2d at 381 (counseling that review of lower court's order requires "examin[ation of] the order to determine if its terms are clear or ambiguous" (citation omitted)). "[I]f [a court's order] conveys more than one meaning such that a reasonable person may fairly and honestly differ in the construction of the terms, then the language is ambiguous, and the appellate court must ascertain the intent of the trial court in entering the order." Prins, 33 S.W.3d at 19-20 (internal quotations and citations omitted). Accord Pare, 870 A.2d at 381. Such intent is ascertained by reference to the record of the lower court's proceedings, Prins, 333 S.W.3d at 19-20 and through the judge's prior statements regarding the order's intended effect, McLeod, 723 S.W.2d at 779.
In contrast to ambiguous orders, which must be construed before their terms can be applied, unambiguous orders must be applied as they are written without reference to extraneous matters. Stated otherwise, "[w]here the [lower court's] order is unambiguous the [court's] intent must be discerned solely from the plain meaning of the words used." Pare, 870 A.2d at 381 (internal quotation and citation omitted). Thus, "[w]hen the judgment or order on its face is plain and unambiguous, extrinsic matters may not be considered to give the decree a different effect from that expressed by the literal meaning of the words used therein." McLeod, 723 S.W.2d at 779 (citation omitted).
To afford the lower court's order its true effect, we must further consider the precise words used by the lower tribunal in rendering its ruling. "In construing a court order, we look to the plain meaning of the words used in the document." Langenfeld, 160 N.H. at 89, 993 A.2d at 236 (citation omitted). Accord Salesky, 157 N.H. at 703, 958 A.2d at 952. This is so because the words of the order, themselves, give meaning to the order's ruling: "The meaning of the order must be discerned from the plain meaning of the words used in the order." Bishop v. Bishop, 858 So.2d 1234, 1237 (Fla. Dist.Ct.App.2003) (citation omitted). Thus, "we give force and effect to every word, if possible, in order to give the decree a consistent, effective and reasonable meaning in its entirety." Brown, 776 N.W.2d at 650 (citation omitted).
Finally, "[a]s a general matter, a court decree or judgment is to be construed with reference to the issues it was meant to decide." Langenfeld, 160 N.H. at 89, 993 A.2d at 236 (citation omitted). Accord Salesky, 157 N.H. at 703, 958 A.2d at 952. Accordingly, an order
should be construed in accordance with its evident intention. Indeed the determinative factor is the intention of the court as gathered from all parts of the decree. Effect is to be given to that which is clearly implied as well as to that which is expressed. Of course, in determining this intent, we take the decree by its four corners and try to ascertain from it the *738 intent as disclosed by the various provisions of the decree.
Brown, 776 N.W.2d at 650 (internal quotations and citations omitted).
To summarize these rules of construction governing the interpretation of a lower court's order, we therefore hold that the interpretation of a court's order is a question of law, which we review de novo. When interpreting a court's order, we apply the same rules of construction as we use to construe other written instruments. We further hold that an ambiguous court order must be construed before it can be applied. Conversely, a court order whose language is plain need not be construed, but should be applied according to the plain meaning of the words used in the order.
Returning to the case sub judice, the parties' dispute centers upon confusion over the meaning of the phrase "medical information." In its second protective order, the circuit court does not indicate what it means by this term. Neither does the record in this case suggest what was intended by the phrase "medical information."
Extensive research as to the common, ordinary, and accepted meaning of "medical information" suggests that this term is used interchangeably with the phrase "medical records." See, e.g., McCormick v. Brzezinski, No. 08-CV-10075, 2008 WL 4965343, at *3 (E.D.Mich. Nov. 18, 2008) (alternating between phrase "medical information" and "medical records" to reference same material sought in discovery); Shady Grove Psychiatric Grp. v. State of Maryland, 128 Md.App. 163, 168, 736 A.2d 1168, 1171 (1999) (using word "information" in definition of "medical record"); Ex parte Department of Health & Envtl. Control, 339 S.C. 546, 549-50, 529 S.E.2d 290, 291-92 (S.C.Ct.App.2000) (construing HIV test results as "sexually transmitted disease records" and "medical information"), rev'd on other grounds, 350 S.C. 243, 565 S.E.2d 293 (2002). From the manner in which the circuit court phrased the terms of its second protective order, it is apparent that the circuit court, too, ascribed the same meaning to both "medical records" and "medical information."
The circuit court's second protective order begins by requiring Mr. and Mrs. Blank to "disclose all relevant medical records," with no separate reference to "medical information." Following the disclosure clause, which does not use the term "medical information," the directory language uses the term "medical information" in detailing how State Farm and Ms. Luby may use the disclosed material and commanding them to return or destroy the same. In this regard, the circuit court refers to "medical records, or medical information,"-in the instructional use clause-and to "medical records, and medical information,"-in the "return or destroy" clause. Because the references to "medical information" merely relate back to "medical records,"[9] which is the only information that the Blanks were directed to disclose in discovery, it is clear that the circuit court used the phrases "medical records" and "medical information" interchangeably. Thus, as no separate, distinct meaning is ascribed to the term "medical information," we therefore conclude that "medical records" and "medical information" both refer to those documents describing the health of and medical treatment rendered to and received by the Blanks referenced by the court in the disclosure portion of its protective order. See, e.g., Howard v. Des Moines Register & Tribune Co., 283 N.W.2d 289, 300 (Iowa 1979) (interpreting "medical records" as "documents . . . compiled for diagnostic or treatment purposes by hospital or medical personnel [or] maintained as records of a hospital or physician" (citations omitted)); Shady Grove Psychiatric Grp., 128 Md.App. at 168, 736 A.2d at 1171 (defining "medical record" as "any oral, written, or other transmission in any form or medium of information that (1) is entered in the record of a patient . . ., (2) identifies or can readily be associated with the identity of a patient . . ., and (3) relates to the health care of the patient" (internal quotations and citation omitted)); State ex rel. Ware v. City of Cleveland, 55 Ohio *739 App.3d 75, 77, 562 N.E.2d 946, 948 (1989) (construing "medical record" as "any document or combination of documents . . . that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is generated and maintained in the process of medical treatment" (internal quotations and citation omitted)).[10]
Despite our conclusion that "medical records" and "medical information" reference the same material, it is necessary to consider the concerns raised by State Farm and Ms. Luby to the effect that their business record claims files and attorney-client correspondence nevertheless are subject to the "return or destroy" directive of the circuit court's protective order. A review of the plain language employed by the circuit court in formulating this provision, however, demonstrates that the defendants' fears are unfounded insofar as the subject language does not require the destruction of either claims files or attorney-client correspondence to comply with the order's mandate. Specifically, the circuit court's second protective order directs that the following items shall be returned or destroyed at the end of the time period prescribed by W. Va.C.S.R. § 114-15-4.2(b)[11]: "all medical records, and medical information or any copies or summaries thereof." No mention is made of claims files; business records; documents prepared in anticipation of litigation, including, but not limited to depositions and interrogatories; or attorney-client communications. Rather, the plain language of the protective order pertains only to medical records/medical information, copies of medical records/medical information, and summaries of medical records/medical information. The protective order does not reference documents of any other type, and we cannot supply language that the circuit court did not include in the first instance. See McLeod, 723 S.W.2d at 779 (prohibiting examination of extraneous material where language of court's order is plain).
While we appreciate the worries expressed by the defendants, all of the parties to this case have agreed and conceded that a protective order is an appropriate means of protecting the privacy interests the Blanks have in their confidential medical records. This agreement is based upon the view that "[a] person's medical profile is an area of privacy infinitely more intimate, more personal in quality and nature than many areas already judicially recognized and protected." Fritsch v. City of Chula Vista, 187 F.R.D. 614, 633 (S.D.Cal.1999) (internal quotations and citations omitted). It follows naturally, then, that "[fundamental to the privacy of medical information is the ability to control [its] circulation." Id. at 633 (internal quotations and citations omitted). See also Doe v. G.J. Adams Plumbing, Inc., 794 N.Y.S.2d 636, 637, 8 Misc.3d 610, 611 (N.Y.Sup.Ct. 2005) ("By placing one's [physical] condition in controversy[,] one is not thereby required to sign a `blank check' for medical records' disclosure." (citation omitted)). To effectuate this controlled disclosure, it is necessary for the defendants to either return or destroy the items referenced by the circuit court at the conclusion of the protective order's period of protection. Although portions of the documents referenced by the defendants may be affected, the documents, themselves, are not required to be returned or destroyed in toto. Rather, only those portions of the defendants' documents that contain the items originally disclosed by the plaintiffs, and which have not otherwise been removed from the scope of the protective order; copies of those original instruments; and summaries of the original instruments or copies thereof are subject to the court's protective order. *740 Return or destruction of summaries, which essentially are paraphrased or abbreviated versions of the original documents, is necessary to protect the Blanks' privacy. See, e.g., Dickinson v. United States, 203 F.2d 336, 341 (defining "summary" as "an abstract, abridgment or compendium" (internal quotations omitted)), cert. granted, 345 U.S. 991, 73 S.Ct. 1136, 97 L.Ed. 1399, rev'd on other grounds, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Tyner v. Sheriff, 164 Ga.App. 360, 361, 297 S.E.2d 114, 115 (1982) ("Summaries are merely compilations of extracted portions of . . . records."); Lloyd v. Yellow Cab Co., 220 Md. 488, 494, 154 A.2d 906, 909 (1959) ("A summary is a brief statement or restatement of main points[.]" (footnote omitted)). In other words, the defendants may not retain documents that are not authorized to be retained by the protective order's terms merely because they have recreated mirror images of the same. See, e.g., Mikron Indus., Inc. v. Tomkins Indus., Inc., No. 98-1179, 1998 WL 911683, at *2 (Fed. Cir. Dec. 10, 1998) (commenting that "[e]nforcement of the protective order did not require `destruction of evidence' but merely the return or destruction of the copies of documents that the [defendant] retains that contain [the plaintiffs] proprietary information" (emphasis added)); Haykel v. G.F.L. Furniture Leasing Co., 76 F.R.D. 386, 391 (D.Ga.1976) (finding defendant entitled to protective order requiring "return [of] all documents and copies of documents discovered under this order at the close of the instant litigation" (emphasis added; citation omitted)). Moreover, in some instances it may be necessary to redact identifying information from the documents retained by State Farm and Ms. Luby to safeguard the Blanks' privacy interest in their medical records because "confidentiality of medical information dealing with identifiable individuals is an interest recognized under . . . [Rule] 26(c)." E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 853 F.Supp. 98, 103 (S.D.N.Y.1994) (citation omitted).
By the same token, however, Mrs. Blank is not permitted to require the destruction or request the return of every single document possessed by State Farm and Ms. Luby merely because it references, in some fashion, the medical records she originally disclosed unless such documents are her or her husband's "medical records, and medical information or any copies or summaries thereof." Despite the Blanks' right to privacy in their medical records, a medical protective order is designed to protect the confidential nature of health and treatment information. A medical protective order is not intended to be a vehicle for improper intrusion into a party's documents that have been prepared in anticipation of or in preparation for litigation or in the course of representing a client. See Hickman v. Taylor, 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947) ("[N]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."); Renucci v. Mercy Hosp., 508 N.Y.S.2d 518, 519, 124 A.D.2d 796, 796 (1986) (recognizing that "materials prepared `in anticipation of litigation or for trial' are exempt from disclosure" (citation omitted)). In this vein, "trial courts have a right and a duty to fashion protective orders which limit access to necessary information only and uphold such principles of nondisclosure as attorney-client privilege and work product immunity." Syl. pt. 3, in part, Martino v. Barnett, 215 W.Va. 123, 595 S.E.2d 65 (2004). Thus, a protective order "cannot and should not at once be used as a shield and a sword." Fritsch, 187 F.R.D. at 626 (internal quotations and citations omitted). See also Vanderbilt v. Town of Chilmark, 174 F.R.D. 225, 229 (D.Mass.1997) ("[A]llowing a plaintiff to hide . . . behind a claim of privilege when that condition is placed directly at issue in a case would simply be contrary to the most basic sense of fairness and justice." (internal quotations and citations omitted)). Cf. Stolzle v. Safety & Sys. Assurance Consultants, Inc., 819 So.2d 287, 289 (La.2002) (per curiam) (noting that "a showing of relevancy and good cause for production has been required in cases where a party seeks production of records from a non-party"); White Plains Coat & Apron Co., Inc. v. Lehmann, 448 N.Y.S.2d 232, 233, 87 A.D.2d 629, 630 (1982) (counseling against "improper wholesale fishing expedition" of party's business records). Nevertheless, it *741 may be necessary for the defendants to redact certain identifying information in the documents that they retain if such information, in its unredacted form, would breach the confidential nature of the Blanks' medical records. See Avondale Indus., Inc. v. N.L.R.B., 90 F.3d 955, 959 (5th Cir.1996) ("Redaction as a means of protecting a private individual's interests is permissible, so long as it is utilized only to the extent necessary to prevent a clearly unwarranted invasion of personal privacy." (citations omitted)); Walters v. Breaux, 200 F.R.D. 271, 274 (W.D.La.2001) (requiring parties to redact certain information prior to disclosure of documents in discovery).
Therefore, because we conclude that the reach of the circuit court's second protective order is not so extensive so as to infringe upon the ability of the defendants to retain documents they have generated from the discovered material that has been disclosed to them by Mrs. Blank unless such documents constitute "medical records, and medical information or any copies or summaries thereof," we deny the requested writ of prohibition on this ground.

D. Burdensome and/or Impossible Compliance
State Farm last argues that compliance with the circuit court's second protective order will be extremely burdensome, if not impossible. In this regard, State Farm contends that West Virginia and federal privacy rules and regulations, as well as State Farm's own privacy policies, provide adequate protection to maintain the confidentiality of the Blanks' medical records such that the parties should not be burdened by the incorporation of additional privacy measures into the subject protective order. Furthermore, State Farm asserts that the circuit court's requirement that counsel provide certificates acknowledging the destruction of the discovered, confidential material renders compliance with the protective order's terms impossible insofar as counsel has no control over third-parties such that it could be held responsible for their actions.
For her part, Ms. Luby echoes State Farm's concerns regarding her ability to control the actions of third-parties to whom the insurer has disseminated the discovered, confidential material. The concerns raised by Ms. Luby's counsel are based upon her duty to represent her insured, rather than the insurance company who hired her to provide such defense. See Barefield v. DPIC Cos., Inc., 215 W.Va. 544, 600 S.E.2d 256 (2004). To the extent that the insurer, itself, discloses the confidential information, counsel for Ms. Luby states that her loyalty lies with her client, and not the insurance company; as such, counsel represents that she would not be in a position to be able to certify whether State Farm has acted in accordance with the protective order's directives.
Mrs. Blank responds that the circuit court's protective order was properly entered and should be upheld.
The portion of the circuit court's second protective order that is challenged herein requires the defendants to, upon the expiration of the document retention period set forth in W. Va.C.S.R. § 114-15-4.2(b), certify that "all medical records, and medical information or any copies or summaries thereof that are not returned to Mrs. Blank have been destroyed:
upon conclusion of the appropriate period established by W. Va.C.S.R. § 114-15-4.2(b), all medical records, and medical information or any copies or summaries thereof, will either be destroyed with a certificate from Defendants' counsel as an officer of the Court that the same has been done, or all such material will be returned to Plaintiff's counsel without retention by Defendants' counsel or any other person who was furnished such materials and information pursuant to the terms of this Protective order....
(Emphasis added). Despite the arguments of State Farm and Ms. Luby, however, we do not find that the circuit court abused its discretion by incorporating a certification clause into its second protective order.
As the parties have acknowledged before this Court, federal law requires the entry of protective orders to protect litigants whose medical records will be disclosed during the course of legal proceedings. See generally 15 U.S.C. § 6801 et seq.; 45 C.F.R. *742 § 164.512(e) (2002) (Rev.Vol.2010). This federally-enacted medical privacy law is the Health Insurance Portability and Accountability Act (hereinafter referred to as "HIPAA"). "HIPAA and [its corresponding] standards ... set forth the baseline for the release of health information." Law v. Zuckerman, 307 F.Supp.2d 705, 708 (D.Md.2004). To promote the "strong federal policy in favor of protecting the privacy of patient medical records," id. at 711, "Congress enacted HIPAA ... to protect the security and privacy of individually identifiable health information," id. at 710 (citations omitted). Pursuant to HIPAA, "discovery of protected health information [is permitted] so long as a court order or agreement of the parties prohibits disclosure of the information outside the litigation and requires the return of the information once the proceedings are concluded." A Helping Hand, LLC v. Baltimore Cnty., Maryland, 295 F.Supp.2d 585, 592 (D.Md.2003). Accord Brzezinski, 2008 WL 4965343, at *3. See also State Farm I, 226 W.Va. at 146, 697 S.E.2d at 738 (commenting that W. Va.C.S.R. § 114-57-15.1, which is patterned after federal statutes, provides privacy protections "to prevent the unauthorized disclosure of confidential medical records contained in claims files"). Indeed, the parties to this proceeding do not dispute that a protective order is appropriate under the facts and circumstances of this case to safeguard Mr. and Mrs. Blank's privacy interests in their medical records.
However, with a protective order comes, also, the incorporation of terms to safeguard the documents it embraces. One clause that is commonly incorporated into protective orders is a certification clause. Such certification clauses typically require the party or parties receiving the information subject to the order's protection to return or destroy the protected information upon the conclusion of the litigation and to verify, i.e., certify, that such actions have been taken to ensure the continued confidentiality of the subject documents. Indeed, this Court specifically has ratified the inclusion of certification language in protective orders by adopting a "Stipulated Qualified Protective Order/Health Information Privacy Agreement" that incorporates certification language substantially similar to the language at issue in the case sub judice:
E. Return or Destruction of All Copies: Within ninety (90) days after the final conclusion of the above-captioned case/ claim by fully-executed non-litigation settlement agreement, filed stipulation of dismissal with prejudice, or final judgment (i.e., a judgment as to which the time for appeal has run), Defendant/Respondent, at his/her/its counsel's option, shall either return to Plaintiff's/Claimant's counsel or destroy Plaintiff's/Claimant's Health Information. Counsel for Defendant/Respondent shall provide written confirmation to Plaintiff's/Claimant's counsel that counsel for Defendant/Respondent has destroyed and/or returned all copies of Plaintiff's/Claimant's Health Information, and made a good faith effort to confirm that Others have destroyed all copies of Plaintiff's/Claimant's Health Information.

W. Va. Mass Litig. Panel Forms, Stipulated Qualified Protective Order/Health Information Privacy Agreement, at ¶ E (emphasis added). Likewise, other courts, also, have adopted form protective orders containing comparable certification language. See, e.g., D. Me. Local Civil Rule App. II, Form Confidentiality Order, at ¶ 12(b);[12] N.D. Ohio Local Civil Rule App. L, Form Protective Order, *743 at ¶ 10(b);[13] W.D. Pa. Local Rule App. LPR 2.2, Protective Order, at ¶ 15;[14] S.D. Tex. Local Rule 4, Protective Order, at ¶ 10.[15]See also S.D. W. Va. Local Civ. Rule, Form Protective Order, at ¶ E.6.[16] Thus, inclusion of a certification clause in a protective order, accompanied by a corresponding affirmation of good faith compliance therewith, is a widely-accepted practice and is a proper provision to incorporate into a protective order to ensure the continued protection of the documents subject to its terms. In their arguments to this Court, neither State Farm nor Ms. Luby has presented a compelling reason to invalidate this provision of the circuit court's protective order. Absent evidence that the circuit court abused its discretion in requiring the defendants to certify that they have destroyed the materials protected by the court's order rather than returning them to Mrs. Blank, we conclude that the circuit court's order is legally sound in requiring such certification.
It also is of no moment that the certification requirement in the case sub judice persists for approximately five years rather than terminating closer in time to the conclusion of the litigation. Although protective orders typically require the return or destruction of the protected material within thirty,[17] sixty,[18] or ninety days,[19] the unique *744 circumstances of the instant proceeding have necessitated the lengthy period of protection in order to permit State Farm to comply with its insurance record retention obligations. See generally State Farm I, 226 W.Va. 138, 697 S.E.2d 730. Because, then, the terms of the second protective order have been specifically tailored to address the concerns raised by State Farm in its prior petition to this Court, we are not inclined to relieve it from the circuit court's order affording it the relief it earlier sought. Having concluded that the certification terms of the circuit court's second protective order are proper, we therefore deny the requested writ of prohibition as to this issue.

IV.

CONCLUSION
For the foregoing reasons, the requested writ of prohibition is hereby denied.
Writ Denied.
KETCHUM, J., dissenting:
I disagree with the majority's opinion, because I believe that the opinion creates several expensive, far-reaching, negative public policy implications.

1. Public policy should allow the preservation of a plaintiff's medical records.
My first and greatest concern is a public policy problem that the majority opinion has not fully considered, and it is one that affects everyone: higher insurance costs. Obviously, it will be expensive for insurance companies to catalogue the medical records collected in every lawsuit, and expensive to later make sure that every archived insurance file is scraped clean of any medical records or summaries. But I anticipate there will be even greater expenses in the future, in the form of new lawsuits: when plaintiffs' lawyers discover a copy of a medical record buried in an insurance company's archivesa record that should have been purgedthere is sure to be a new round of lawsuits looking for more compensation.
More importantly, the insurance industry should be allowed to hold down its costs by maintaining data banks of medical records to identify malingerers and cheaters and double-dippers. Adjusters settling personal injury claims prior to a lawsuit should have access to the claimant's complete prior medical history. Experience has taught insurance companies that a reliable data bank is quicker and more thorough than asking a claimant to produce all of his/her past medical history (particularly when a claimant improperly wants newly compensated for an old injury).
So long as medical records that are held by the insurance industry are not being abused, the industry should be able to honestly and thoroughly judge the value of potential lawsuits with complete information.

2. The plaintiff had no privacy interest in the medical records
There are no statutes, regulations or court decisions creating a confidentiality or privacy interest in a plaintiffs medical records, when those records are lawfully distributed to an adverse party in a personal injury lawsuit. The majority opinion partly relies on the privacy interest created by the federal Health Information and Accountability Act of 1996 (HIPAA) and court cases interpreting this act. However, that privacy interest does not extend to medical records in a personal injury lawsuit. Confidentiality or privacy under HIPAA applies only in the context of medical records maintained by a healthcare provider, not records provided to an opposing party in a lawsuit. HIPAA does not address the confidentiality of medical records that are given lawfully to an adverse party who owes no duty to the plaintiff.

*745 3. Waiver

Even if we presume there is some statutory or regulatory authority creating a right to medical record confidentiality, I believe a plaintiff waives this right by filing a lawsuit in a public forum and delivering the records to opposing parties. Once confidential information is made public, it cannot be hidden or concealed again.
A waiver at a former trial should bar a claim of the privilege at a later trial, for the original disclosure takes away once and for all the confidentiality sought to be protected by the privilege. To enforce it thereafter is to seek to preserve a privacy which exists in legal fiction only.
8 John Henry Wigmore, Evidence, § 2389(d)(4) at 860-61 (McNaughton Ed., 1961).
When medical records are lawfully released to other parties, at trial, or made public by the plaintiff, any privilege of confidentially is generally waived. See, Hageman v. Southwest General Health Center, 119 Ohio St.3d 185, 192-93, 893 N.E.2d 153, 159-60 (2008) (O'Donnell, J., dissenting).

4. Imposition of a new duty on defense lawyers and insurance companies.
The majority opinion places a new duty on defense lawyers and insurance companies by requiring them to destroy lawfully-obtained medical records and any summaries of these records. I can find no cases placing a duty upon adverse parties to take care of or destroy an adversaries' medical records. I therefore find it disconcerting that the majority opinion has, essentially, pulled this new duty out of thin air.

5. Conclusion
In conclusion, I am always wary of creating new privileges without a full weighing and balancing of all the public policy impacts of that new privilege. I do not think that the majority opinion has fully weighed the competing public policy choices in this case. Accordingly, I respectfully dissent.
BENJAMIN, J., dissenting:

(Filed July 22, 2011)

I
Before us is a case of judicial déjà vu. As the majority noted, this is the second time these parties have been before the Court regarding the entry of a protective order by the circuit court. On our first viewing, State Farm I, the Court issued a writ of prohibition to prevent the circuit court from enforcing its order because the order potentially interfered with State Farm's ability to comply with West Virginia law. State ex rel. State Farm Mutual Automobile Insurance Co. v. Bedell, 226 W.Va. 138, 146, 697 S.E.2d 730, 738 (2010).[1] Although the second order produced by the circuit court still contains the potential for interference with West Virginia law, the Court on this second viewing, State Farm II, has experienced a change of heart. Because I believe this Court, by allowing enforcement of the circuit court's second order, is setting harmful precedent by sanctioning orders that may result in a direct conflict with the laws of this state, I respectfully dissent.
In State Farm II, the potential conflict arises between the order and W. Va.Code § 33-41-5(a), which provides,
A person engaged in the business of insurance having knowledge or a reasonable belief that fraud or another crime related to the business of insurance is being, will be or has been committed shall provide to the [Insurance Commissioner] the information required by, and in a manner prescribed by, the commissioner.
W. Va.Code § 33-41-5(a) (2006); see also the Amicus Curiae brief submitted by Jane L. Cline, West Virginia Insurance Commissioner. In recognizing that the business of insurance has the potential for fraud, the West Virginia Code has given the Insurance Commissioner the important duty of investigating possible instances of fraud and prosecuting fraud. W. Va.Code § 33-41-1(b).
The language of the circuit court's order excludes the Insurance Commissioner from *746 its list of parties to whom State Farm's counsel may disclose the medical records or medical information. Specifically, the order states,
Defendants' counsel will not disclose orally or in summary form any of the Plaintiff's or Decedent's medical records, or medical information to any person other than their clients, office staff, and experts necessary to assist in this case, including necessary servants, agents, and employees of their clients .... Defendants' counsel may disclose... such information to the Defendants' experts and insurance carrier....
The order, by its explicit language, excludes the disclosure of the medical records or medical information to parties not listed in the order, namely the Insurance Commissioner. Should the Insurance Commissioner suspect fraudulent behavior and demand that State Farm produce information protected by this order, State Farm will be required to choose between violating statutory law or violating this order. In addition to placing State Farm "between a rock and a hard place," this protective order and others like it have the potential to frustrate the policy goals of the fraud prevention sections of the West Virginia Code.
In its opinion, the majority refuses to consider the potential conflict with § 33-41-1(b), quoting syllabus point 2, Sands v. Security Trust Company, 143 W.Va. 522, 102 S.E.2d 733 (1958): "This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance."[2] I do not dispute that this is the law regarding appeals. However, this case involves a writ of prohibition. This Court has long recognized that "[p]rohibition lies as a matter of right in all cases of usurpation and abuse of power. And a party whose rights have been so invaded need not, as a prerequisite, give the court sought to be prohibited an opportunity to pass on questions raised." Hatfield v. Ferguson, 115 W.Va. 519, 521, 177 S.E. 192, 193 (1934) (internal citations omitted).[3] Thus, this Court is not barred from considering the petitioners' challenge regarding § 33-41-1(b).
Upon consideration of § 33-41-1(b), it is apparent that a potential for conflict exists between it and the order granted by the circuit court and that the petitioner is entitled to a writ of prohibition. As the potential for conflict with existing law was sufficient to issue a writ of prohibition in State Farm I, I fail to see how the potential for conflict with existing law is now insufficient to issue a writ of prohibition in State Farm II.

II.
I am also troubled by the majority's findings as to the scope of the order's reach. The order states, "Also, upon conclusion of the appropriate period ..., all medical records, and medical information, or any copies or summaries thereof, will either be destroyed..., or all such materials will be returned to Plaintiff's counsel." State Farm and Ms. Luby's counsel objected to this language. *747 They argued that documents which they themselves create which include information gleaned from the medical information disclosed by Ms. Blankinformation that may become part of their respective protected business records or client fileis subject to the destruction or return requirement of the order as "medical information."
The majority dismisses this concern by concluding that "medical records" and "medical information" are used interchangeably in the order to mean only "medical records." The majority refers extensively to non-controlling authority to determine first that "we look to the plain meaning of the words used in the document" in construing a court order,[4] and second, that "an order should be construed in accordance with its evident intention."[5] Even viewing these non-authoritative cases as controlling precedent in this jurisdiction, it is beyond me as to how the majority could conclude that the terms, "medical information" and "medical records," are synonymous terms meaning only "medical records."
The majority reaches its conclusion after performing "extensive research" into cases that include the terms at issue. It argues that these cases, again from other jurisdictions, show that the terms can be used interchangeably to refer only to medical records. However, upon reviewing the cases cited by the majority, it is apparent that none of those courts has recognized that "medical records" refers to all types of "medical information."[6] From my review of the cases cited and the circuit court's order, "medical information" refers to a broad category of information that includes various types of medical documents, statements, and summaries, including, inter alia, "medical records." The term "medical records" is encompassed by the term "medical information"; "medical records" describes a sub-category of "medical information".
Furthermore, equating the meaning of these terms simply does not make sense in the context of the order. The order requires destruction or return of "medical records, and medical information or any copies or summaries thereof." First, the order uses the conjunctive "and" to separate "medical records" and "medical information." By its plain terms, the circuit court's order distinguished the terms as separate and distinct from each other. Second, if the terms at issue refer to the same material, then the order is thoroughly redundant. If we are to construe this order "in accordance with its evident intention",[7] these terms cannot take on an identical meaning.
For these reasons, I respectfully dissent.
NOTES
[1] Also appearing before the Court in this proceeding are numerous Amici Curiae who support State Farm's position in this case: Defense Trial Counsel of West Virginia; National Insurance Crime Bureau; West Virginia Insurance Federation; and West Virginia Mutual Insurance Company. Additionally, Jane L. Cline, West Virginia Insurance Commissioner, also appears as an Amicus Curia herein. We appreciate the appearance of these Amici Curiae and will consider their arguments in conjunction with those of the parties.
[2] For further treatment of the Health Insurance Portability and Accountability Act ("HIPAA"), see Section HID., infra.
[3] Although our opinion in State Farm I also resolved the time limitations for the retention, return, and destruction of the documents at issue therein, our good cause discussion was limited to the first protective order's electronic storage provisions. See State Farm I, 226 W.Va. at 147, 697 S.E.2d at 739 (footnote omitted).
[4] W. Va.Code § 33-41-5(a) (2004) (Repl.Vol. 2006) requires

[a] person engaged in the business of insurance having knowledge or a reasonable belief that fraud or another crime related to the business of insurance is being, will be or has been committed shall provide to the commissioner the information required by, and in a manner prescribed by, the commissioner.
[5] Pursuant to 215 Illinois Compiled Statutes 5/133(2) (1995) (West Main Vol.2000), an insurer is required to retain its claims files information until it has received permission from the Illinois Director of Insurance to destroy such records:

(2) All such original books, records, documents, accounts and vouchers, or such reproductions thereof, of the home office of any domestic company or of any principal United States office of a foreign or alien company located in this State shall be preserved and kept available in this State for the purpose of examination and until authority to destroy or otherwise dispose of such records is secured from the Director. Such original records may, however, be kept and maintained outside this State if, according to a plan adopted by the company's board of directors and approved by the Director, it maintains suitable records in lieu thereof. . . . Failure to comply with this provision constitutes a "business offense" for which a fine of up to $5,000 may be imposed. See 215 Ill. Comp. Stat. 5/133(4) ("Any director, officer, agent or employee of any company who destroys any such books, records or documents without the authority of the Director in violation of this section or who fails to keep the books, records, documents, accounts and vouchers required by this section shall be guilty of a business offense and shall be fined not more than $5000.00.").
[6] See Section III.C., infra, for the referenced portion of the circuit court's second protective order.
[7] See, e.g., Syl. pt. 2, State v. Epperly, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").
[8] See, e.g., Syl. pt. 3, Waddy v. Riggleman, 216 W.Va. 250, 606 S.E.2d 222 (2004) ("`"Where the terms of a contract are clear and unambiguous, they must be applied and not construed." Syl. Pt. 2, Bethlehem Mines Corp. v. Haden, 153 W.Va. 721, 172 S.E.2d 126 (1969).' Syllabus point 2, Orteza v. Monongalia County General Hospital, 173 W.Va. 461, 318 S.E.2d 40 (1984).").
[9] See Reed Dickerson, The Fundamentals of Legal Drafting 76 (1965) (commenting that "and" and "or" are "semantically ambiguous").
[10] Our recent decision in Lawyer Disciplinary Board v. Smoot, 228 W.Va. 1, 716 S.E.2d 491 (2010), is not instructive to our decision in the case sub judice insofar as Smoot defined the term "medical report," and not "medical records" or "medical information." See Syl. pt. 3, id.
[11] This language employed in the circuit court's second protective order is consistent with our holding in Syllabus point 7 of State Farm I:

[a] court may not issue a protective order directing an insurance company to return or destroy a claimant's medical records prior to the time period set forth by the Insurance Commissioner of West Virginia in §§ 114-15-4.2(b) and 114-15-4.4(a) of the West Virginia Code of State Rules for the retention of such records.
[12] The form protective order adopted by the United States District Court for the District of Maine provides, in pertinent part:

(b) Return of CONFIDENTIALSUBJECT TO PROTECTIVE ORDER Documents. Within thirty days after dismissal or entry of final judgment not subject to further appeal, all documents treated as CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER under this Order, including copies as defined in ¶ 6(d), shall be returned to the producing party unless: (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction in lieu of return; or (3) as to documents bearing the notations, summations, or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so....
D. Me. Local Civil Rule App. II, Form Confidentiality Order, at ¶ 12(b).
[13] The United States District Court for the Northern District of Ohio has approved a form protective order which directs:

(b) Return of CONFIDENTIALSUBJECT TO PROTECTIVE ORDER Documents. Within thirty days after dismissal or entry of final judgment not subject to further appeal, all documents treated as CONFIDENTIALSUBJECT TO PROTECTIVE ORDER under this Order, including copies as defined in ¶ 5(d), shall be returned to the producing party unless: (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction in lieu of return; or (3) as to documents bearing the notations, summations, or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so....
N.D. Ohio Local Civil Rule App. L, Form Protective Order, at ¶ 10(b).
[14] The form protective order adopted by the United States District Court for the Western District of Pennsylvania provides, in pertinent part:

15. Within sixty (60) calendar days after final judgment in this action, including the exhaustion of all appeals, or within sixty (60) calendar days after dismissal pursuant to a settlement agreement, each party or other person subject to the terms of this Protective Order shall be under an obligation to destroy or return to the producing party all materials and documents containing Confidential Information or Confidential Attorney Eyes Only Information, and to certify to the producing party such destruction or return....
W.D. Pa. Local Rule App. LPR 2.2, Protective Order, at ¶ 15.
[15] The United States District Court for the Southern District of Texas has approved a form protective order which directs:

10. Within sixty (60) days after final judgment in this action, including the exhaustion of all appeals, or within sixty (60) days after dismissal pursuant to a settlement agreement, each party or other person subject to the terms of this Protective Order is under an obligation to destroy or return to the producing party all materials and documents containing "Confidential Information" or "Highly Confidential Information," and to certify to the producing party that this destruction or return has been done....
S.D. Tex. Local Rule 4, Protective Order, at ¶ 10.
[16] In the form protective order used by the United States District Court for the Southern District of West Virginia, parties who have disclosed the protected information to third-parties are directed, "[a]t the conclusion of the action, [to] gather the "CONFIDENTIAL" materials, copies thereof, and related notes and memoranda, and return them to the party or attorney who originally disclosed them, with a certificate of compliance with the terms of this Protective Order." S.D. W. Va. Local Civ. Rule, Form Protective Order, at ¶ E.
[17] See, e.g., D. Me. Local Civil Rule App. II, Form Confidentiality Order, at ¶ 12(b) (requiring return or destruction and certification thereto of protected documents "[w]ithin thirty days after dismissal or entry of final judgment not subject to further appeal"); N.D. Ohio Local Civil Rule App. L, Form Protective Order, at ¶ 10(b) (requiring return or certification as to destruction of protected documents "[w]ithin thirty days after dismissal or entry of final judgment not subject to further appeal").
[18] See, e.g., W.D. Pa. Local Rule App. LPR 2.2, Protective Order, at ¶ 15 (mandating certification of return or destruction of protected documents "[w]ithin sixty (60) calendar days after final judgment in this action, including the exhaustion of all appeals, or within sixty (60) calendar days after dismissal pursuant to a settlement agreement"); S.D. Tex. Local Rule 4, Protective Order, at ¶ 10 (directing parties, "[w]ithin sixty (60) days after final judgment in this action, including the exhaustion of all appeals, or within sixty (60) days after dismissal pursuant to a settlement agreement," to certify return or destruction of protected documents).
[19] See, e.g., W. Va. Mass Litig. Panel Forms, Stipulated Protective Order/Health Information Privacy Agreement, at ¶ E (requiring written confirmation of return or destruction of protected documents "[w]ithin ninety (90) days after the final conclusion of the above-captioned case/ claim by fully-executed non-litigation settlement agreement, filed stipulation of dismissal with prejudice, or final judgment (i.e., a judgment as to which the time for appeal has run)").
[1] The Court also noted that the circuit court abused its authority in issuing the order because Ms. Blank failed to show good cause as required by West Virginia Rule of Civil Procedure 26(c). State Farm I, 226 W.Va. 138, 148, 697 S.E.2d 730, 740.
[2] The Court also referred to Whitlow v. Board of Education of Kanawha County, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993) (appeal from the circuit court's finding that the plaintiff's suit was time barred); Hanlon v. Logan County Board of Education, 201 W.Va. 305, 315, 496 S.E.2d 447, 457 (1997) (appeal from the circuit court's finding that the defendant acted within its hiring authority); State v. Browning, 199 W.Va. 417, 425, 485 S.E.2d 1, 9 (1997) (appeal from the circuit court's order to uphold defendant's conviction); syl. pt. 2, Duquesne Light Co. v. State Tax Department, 174 W.Va. 506, 327 S.E.2d 683 (1984) (appeal from the circuit court's decision to strike down a tax on electricity generation); and syl. pt. 2, Cameron v. Cameron, 105 W.Va. 621, 143 S.E. 349 (1928) (appeal from the circuit court's dismissal of plaintiff's action seeking cancellation of a decree annulling marriage).
[3] The Court has taken the identical approach to cases involving a writ of prohibition sought for lack of jurisdiction. See, e.g., Morris v. Calhoun 119 W.Va. 603, 609, 195 S.E. 341, 345 (1938) ("Many of the earlier cases in this state adopted the rule that a challenge to the jurisdiction of a trial court should be made in such court as a condition precedent to the right to apply to this court for the writ of prohibition. This rule has been abandoned; it never was an inflexible or arbitrary rule, but more one of judicial courtesy to the court sought to be prohibited. As the law now is, this court ... has power to deal with questions presented to it with reference to jurisdiction... without regard to objection or lack of objection to such jurisdiction in the court below.") (citing, inter alia, Hatfield, 115 W.Va. 519, 177 S.E. 192).
[4] In re Langenfeld, 160 N.H. 85, 89, 993 A.2d 232, 236 (2010) (citation omitted).
[5] In re Marriage of Brown, 776 N.W.2d 644, 650 (Iowa 2009).
[6] McCormick v. Brzezinski, No. 08-CV-10075, 2008 WL 4965343, at *3 (E.D.Mich. Nov. 18, 2008) (using "medical information" to describe "medical records", but not using "medical records" to refer to "medical information"); Shady Grove Psychiatric Grp. v. State of Maryland, 128 Md.App. 163, 168, 736 A.2d 1168, 1171 (1999) (using "information" to define "medical record," but not using "medical record" interchangeably with "information"); Ex parte Dept. of Health & Envtl. Control, 339 S.C. 546, 549-50, 529 S.E.2d 290, 291-92 (S.C.Ct.App.2000) (using "medical information" to describe STD records, but not using STD records to refer to "medical information").
[7] In re Marriage of Brown, 776 N.W.2d 644, 650 (Iowa 2009).